Mr. Justice Stewart
delivered the opinion of the Court.
The Twenty-first Amendment to the Constitution, which repealed the Eighteenth, provides in its second section that “The transportation or importation into any *457 State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in viola^ tion of the laws thereof, is hereby prohibited.” This appeal requires consideration of the relationship of this provision of the Twenty-first Amendment to other provisions of the Constitution, particularly the Commerce Clause.[1]
The appellee (Idlewild) is engaged in the business of selling bottled wines and liquors to departing international airline travelers at the John F. Kennedy Airport in New York. Its place of business is leased from the Port of New York Authority for use solely as “an office in connection with the sale ... of in-bond wines and liquors.” Idlewild accepts orders only from travelers whose tickets and boarding cards indicate their imminent departure. A customer gets nothing but a receipt at the time he gives his order and makes payment. The liquor which he orders is transferred directly to the departing aircraft on documents approved by United States Customs, and is not delivered to the customer until he arrives at his foreign destination.
The beverages sold by Idlewild are purchased by it from bonded wholesalers located outside New York State who deal in tax-free liquors for export. Merchandise ordered by Idlewild is withdrawn from bonded warehouses on approved Customs documents, copies of which are mailed by the wholesalers both to Idlewild and to the United States Customs Office at the airport. A third sealed copy of the document is given to the bonded trucker who delivers it to the Customs Office at the airport after he has transported the shipment to Idlewild’s place of business. The contents of each shipment are recorded by Idlewild, as are withdrawals from inventory *458 whenever a sale is made, and when an entire shipment has been sold, these records are turned over to Customs officials. Idlewild’s records and its physical inventory, as well as the transfer of the liquor from the bonded trucks to Idlewild’s premises and from those premises to the departing aircraft, are at all times open to inspection by the Bureau of Customs. Before Idlewild commenced these business operations in 1960, the Bureau of Customs inspected its place of business and explicitly approved its proposed method of operations.
Idlewild commenced doing business in the spring of 1960. A few weeks later, the New York State Liquor Authority, whose members are the appellants in this case, informed Idlewild, upon the advice of the Attorney General of New York, that its business was illegal under the provisions of the New York Alcoholic Beverage Control Law, because the business was unlicensed and unlicensable under that law.[2] Idlewild thereupon brought the present *459 action for an injunction restraining the appellants from interfering with its business, and for a judgment declaring that the provisions of the New York statute, as applied to its business, were repugnant to the Commerce Clause of the Constitution, and, under the Supremacy-Clause, to the Tariff Act of 1930, under which the Bureau of Customs had approved Idlewild’s business operations.[8]
After lengthy procedural delays,[4] a three-judge District Court granted the requested relief. 212 F. Supp. 376. The court expressed doubt that the New York Alcoholic Beverage Control Law was intended to apply to a business such as that carried on by Idlewild, both because of the manifest irrelevance to such a business of many of the law’s provisions,[5] and because the New York courts *460 had held that the law was inapplicable to the sale of liquor in the Free Trade Zone of the Port of New York. During v. Valente, 267 App. Div. 383, 46 N. Y. S. 2d 385. See also Rosenblum v. Frankel, 279 App. Div. 66, 108 N. Y. S. 2d 6. In view of the posture of the litigation, the court declined, however, to defer deciding the merits of the controversy pending a construction of the statute by the New York courts, although recognizing that “a technical application of the doctrine of abstention” would under ordinary circumstances counsel such a course.
On the merits the court concluded, after reviewing the relevant cases, that the Commerce Clause rendered constitutionally impermissible New York’s attempt wholly to terminate Idlewild’s business operations. The court conceded that New York has broad power under the Twenty-first Amendment to supervise and regulate the transportation of liquor through its territory for the purpose of guarding against a diversion of such liquor into domestic channels, but pointed out that “the Liquor Authority has neither alleged nor proved the diversion of so much as one bottle of plaintiff’s merchandise to users within the state of New York.” 212 F. Supp., at 386. We noted probable jurisdiction, 375 U. S. 809, and for the reasons which follow, we affirm the judgment of the District Court.
We hold first that the District Court did not err in declining to defer to the state courts before deciding this controversy on its merits. The doctrine of abstention is equitable in its origins, Railroad Comm’n v. Pullman Co., 312 U. S. 496, 500-501, and this Court has held that, even *461 though constitutional issues be involved, “reference to the state courts for construction of the statute should not automatically be made.” N. A. A. C. P. v. Bennett, 360 U. S. 471. Unlike many cases in which abstention has been held appropriate, there was here no danger that a federal decision would work a disruption of an entire legislative scheme of regulation.[6] We therefore accept the District Court’s decision that abstention was unwarranted here, where neither party requested it and where the litigation had already been long delayed, despite the plaintiff’s efforts to expedite the proceedings.[7]
Turning, then, to the merits of this controversy, the basic issue we face is whether the Twenty-first Amendment so far obliterates the Commerce Clause as to empower New York to prohibit absolutely the passage of liquor through its territory, under the supervision of the United States Bureau of Customs acting under federal law,[8] for delivery to consumers in foreign countries. For it is not disputed that, if the commodity involved here were not liquor, but grain or lumber, the Commerce Clause would clearly deprive New York of any such power. Lemke v. Farmers Grain Co., 258 U. S. 50; Texas & N. O. R. Co. v. Sabine Tram Co., 227 U. S. 111; Oklahoma v. Kansas Nat. Gas Co., 221 U. S. 229.
*462 This Court made clear in the early years following adoption of the Twenty-first Amendment that by virtue of its provisions a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders. Thus, in upholding a State’s power to impose a license fee upon importers of beer, the Court pointed out that “[p]rior to the Twenty-first Amendment it would obviously have been unconstitutional to have imposed any fee for that privilege. The imposition would have been void, . . . because the fee would be a direct burden on interstate commerce; and the commerce clause confers the right to import merchandise free into any state, except as Congress may otherwise provide.” State Board v. Young’s Market Co., 299 U. S. 59, 62.[9] In the same vein, the Court upheld a Michigan statute prohibiting Michigan dealers from selling beer manufactured in a State which discriminated against Michigan beer. Brewing Co. v. Liquor Comm’n, 305 U. S. 391. “Since the Twenty-first Amendment, . . . the right of a state to prohibit or regulate the importation of intoxicating liquor is not limited by the commerce clause . . . .” Id., at 394. See also Finch & Co. v. McKittrick, 305 U. S. 395.
This view of the scope of the Twenty-first Amendment with respect to a State’s power to restrict, regulate, or prevent the traffic and distribution of intoxicants within its borders has remained unquestioned. See California v. Washington, 358 U. S. 64. Thus, in Ziffrin, Inc., v. Reeves, 308 U. S. 132, there was involved a Kentucky statute, “a long, comprehensive measure (123 sections) *463 designed rigidly to regulate the production and distribution of alcoholic beverages through means of licenses and otherwise. The manifest purpose is to channelize the traffic, minimize the commonly attendant evils; also to facilitate the collection of revenue. To this end manufacture, sale, transportation, and possession are permitted only under carefully prescribed conditions and subject to constant control by the State.” Id., at 134. The Court upheld a provision of that “comprehensive measure” which prohibited a domestic manufacturer of liquor from delivering his product to an unlicensed private carrier. The Court noted that “Kentucky has seen fit to permit manufacture of whiskey only upon condition that it be sold to an indicated class of customers and transported in definitely specified ways. These conditions are not unreasonable and are clearly appropriate for effectuating the policy of limiting traffic in order to minimize well-known evils, and secure payment of revenue. The statute declares whiskey removed from permitted channels contraband subject to immediate seizure. This is within the police power of the State; and property so circumstanced cannot be regarded as a proper article of commerce.” Id., at 139.[10]
To draw a conclusion from this line of decisions that the Twenty-first Amendment has somehow operated to *464 “repeal” the Commerce Clause wherever regulation of intoxicating liquors is concerned would, however, be an absurd oversimplification. If the Commerce Clause had been pro tanto “repealed,” then Congress would be left with no regulatory power over interstate or foreign commerce in intoxicating liquor. Such a conclusion would be patently bizarre and is demonstrably incorrect. In Jameson & Co. v. Morgenthau, 307 U. S. 171, “the Federal Alcohol Administration Act was attacked upon the ground that the Twenty-first Amendment to the Federal Constitution gives to the States complete and exclusive control over commerce in intoxicating liquors, unlimited by the commerce clause, and hence that Congress has no longer authority to control the importation of these commodities into the United States.” The Court’s response to this theory was a blunt one: “We see no substance in this contention.” Id., at 172-173. See also United States v. Frankfort Distilleries, 324 U. S. 293. (Sherman Act.)
Both the. Twenty-first Amendment and the Commerce Clause are parts of the same Constitution. Like other provisions of the Constitution, each must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case.
This principle is reflected in the Court’s decision in Collins v. Yosemite Park Co., 304 U. S. 518. There it was held that the Twenty-first Amendment did not give California power to prevent the shipment into and through her territory of liquor destined for distribution and consumption in a national park. The Court said that this trafile did not involve “transportation into California 'for delivery or use therein’ ” within the meaning of the Amendment. “The delivery and use is in the Park, and under a distinct sovereignty.” Id., at 538. This ruling was later characterized by the Court as hold *465 ing “that shipment through a state is not transportation or importation into the state within the meaning of the Amendment.” Carter v. Virginia, 321 U. S. 131, 137.[11] See also Johnson v. Yellow Cab Co., 321 U. S. 383, aff’g, 137 F. 2d 274.
We may assume that if in Collins California had sought to regulate or control the transportation of the liquor there involved from the time of its entry into the State until its delivery at the national park, in the interest of preventing unlawful diversion into her territory, California would have been constitutionally permitted to do so.[12] But the Court held that California could not prevent completely the transportation of the liquor across the State’s territory for delivery and use in a federal enclave within it.
A like accommodation of the Twenty-first Amendment with the Commerce Clause leads to a like conclusion in the present case. Here, ultimate delivery and use is not in New York, but in a foreign country. The State has not sought to regulate or control the passage of intoxicants through her territory in the interest of preventing their unlawful diversion into the internal commerce of the State. As the District Court emphasized, this case does not involve “measures aimed at preventing unlawful *466 diversion or use of alcoholic beverages within New York.” 212 F. Supp., at 386. Rather, the State has sought totally to prevent transactions carried on under the aegis of a law passed by Congress in the exercise of its explicit power under the Constitution to regulate commerce with foreign nations. This New York cannot constitutionally do.

Affirmed.

Mr. Justice Brennan took no part in the consideration or decision of this case.

 “The Congress shall have Power ... To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.” U. S. Const., Art. I, § 8, cl. 3.

 The opinion of the New York Attorney General was based primarily upon the following provisions of the New York law:
“ ‘Sale’ means any transfer, exchange or barter in any manner or by any means whatsoever for a consideration, and includes and means all sales made by any person, whether principal, proprietor, agent, servant or employee of any alcoholic beverage and/or a warehouse receipt pertaining thereto. ‘To sell’ includes to solicit or receive an order for, to keep or expose for sale, and to keep with intent to sell and shall include the delivery of any alcoholic beverage in the state.” New York Alcoholic Beverage Control Law, § 3, Subd. 28.
“No person shall manufacture for sale or sell at wholesale or retail any alcoholic beverage within the state without obtaining the appropriate license therefor required by this chapter.” New York Alcoholic Beverage Control Law, § 100, Subd. 1.
“No premises shall be licensed to sell liquors and/or wines at retail for off premises consumption, unless said premises shall be located in a store, the entrance to which shall be from the street level and located on a public thoroughfare in premises which may be occupied, operated or conducted for business, trade or industry or on an arcade or sub-surface thoroughfare leading to a railroad terminal.” New York Alcoholic Beverage Control Law, § 105, Subd. 2.

 See 19 U. S. C. § 1311. The complaint also relied on the Export-Import Clause of the Constitution, Art. I, § 10, cl. 2, but such reliance was obviously misplaced, because New York has not sought to “lay any Imposts or Duties” upon the merchandise sold by Idlewild.

 The appellee’s original motion to empanel a three-judge court under 28 U. S. C. §§ 2281 and 2284 was denied by a single district judge, who retained jurisdiction pending resolution of the substantive issues by the state courts. 188 F. Supp. 434. The Court of Appeals for the Second Circuit dismissed on appeal on the ground that it was without jurisdiction, though expressing the view that a three-judge court should have been convened. 289 F. 2d 426. The appellee’s renewed request for a three-judge court was then denied by a district judge on the ground that previous District Court rulings in the litigation had established the “law of this case” and that the Court of Appeals’ statement that a three-judge court should have been convened was “dictum.” 194 F. Supp. 3. After granting certi-orari and a motion for leave to file a petition for a writ of mandamus, 368 U. S. 812, this Court, holding that a three-judge court should have been empaneled, remanded the case to the District Court “for expeditious action” to that end. 370 U. S. 713.

 The court noted, for example: “The definition of sale in Section 3 (28) provides that ‘ “To sell” . . . shall include the delivery of any alcoholic beverage in the state.’ This, of course, is inapplicable to plaintiff’s sales. Whatever may be the purpose of Section 105 (2) in requiring that a retail liquor store have an entrance from the *460 street level and be located dn a public thoroughfare, the requirements, which may be appropriate where liquor purchases are delivered directly to the customer, seem quite irrelevant to a concern which sells liquor exclusively for delivery in a foreign country.” 212 F. Supp., at 379.

 Cf. Government Employees v. Windsor, 353 U. S. 364; American Federation of Labor v. Watson, 327 U. S. 582; Great Lakes Co. v. Huffman, 319 U. S. 293; Burford v. Sun Oil Co., 319 U. S. 315, 323-325; Chicago v. Fieldcrest Dairies, 316 U. S. 168.

 See Louisiana P. & L. Co. v. Thibodaux City, 360 U. S. 25, 29, 31; Allegheny County v. Mashuda Co., 360 U. S. 185, 196-197.

 The appellants have argued that Idlewild’s operations do not in fact conform to the various federal statutory and administrative standards under authority of which the operations are conducted. But there is no indication that the Bureau of Customs has ever questioned the regularity of Idlewild’s operations under the relevant federal law and regulations.

 Likewise, in Mahoney v. Triner Corp., 304 U. S. 401, the Court held that the Equal Protection Clause is not applicable to imported intoxicating liquor. “A classification recognized by the Twenty-first Amendment cannot be deemed forbidden by the Fourteenth.” Id., at 404.

 Quite independently of the Twenty-first Amendment, the Court has sustained a State’s power, within the confines of the Commerce Clause, to regulate and supervise the transportation of intoxicants through its territory. See Duckworth v. Arkansas, 314 U. S. 390; Carter v. Virginia, 321 U. S. 131. In Duckworth, Mr. Justice Jackson relied on the Twenty-first Amendment in concurring in the judgment. 314 U. S., at 397. In Carter, Mr. Justice Black, Mr. Justice Frankfurter, and Mr. Justice Jackson wrote separate concurrences, relying upon the Twenty-first Amendment. 321 U. S., at 138, 139. Cf. Gordon v. Texas, 355 U. S. 369, upholding a similar state statute in a per curiam citing both the Twenty-first Amendment and Carter v. Virginia, supra.

 Prior to the Eighteenth Amendment, Congress passed laws giving the States a large degree of autonomy in regulating the importation and distribution of intoxicants. These laws, the Wilson Act and the Webb-Kenyon Act, are still in force. 27 U. S. C. §§ 121,122. In United States v. Gudger, 249 U. S. 373, the Court held that under the Reed amendment of 1917 — passed by Congress to strengthen these laws, 39 Stat. 1058, 1069 — a prohibition upon transportation “into” a State did not prohibit the “movement through one State as a mere incident of transportation to the [place] into which it is shipped.” Id., at 375.

 See cases cited in note 10, supra.