

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

April 26, 1968

Honorable O. N. Humphreys         Opinion M-227
Acting Administrator
Texas Liquor Control Board
Sam Houston State Office Building
Austin, Texas 78711         Re: Twenty-two questions
relating to the legal-
ity or illegality of
sale, service, and
possession of alcoholic
beverages by commer-
cial airlines or em-
ployees thereof, within
the State of Texas and
the air space over
territory within state
Dear Mr. Humphreys:         boundaries.

Your office has recently submitted, to be answered by an official opinion, a series of twenty-two questions relating to the legality or illegality of sale, service, and possession of alcoholic beverages by commercial airlines or employees thereof, within the State of Texas and the air space over territory within state boundaries.

The initial question which you have presented is stated as follows:

"Question 1. Is it unlawful for an employee of a commercial airline to sell liquor or beer, which liquor or beer was not manufactured by the process of distillation and does not contain distilled spirits, to a passenger inside an airplane which airplane is owned by such commercial airline and is in the air above the State of Texas and is in route from a point in Texas to another point in Texas?"

It is well settled that an employee assisting in an illegal act is equally guilty with his principal and both may be indicted and punished. Consequently, for the purposes of our answer to your first and subsequent questions we will consider the employee's liability, if any, to be co-extensive with the liability, if any, of the airlines.

In answering your first and subsequent questions, we will consider further that liquor or beer not manufactured by a process of distillation and not containing distilled spirits includes any intoxicating alcoholic beverage manufactured by (or containing alcohol manufactured by) fermentation or other means without regard to whether such beverage is commonly designated liquor, beer, malt liquor, wine or by some other nomenclature.

Under the Twenty-First Amendment to the Constitution of the United States, the states have broad regulatory powers over liquor traffic. The Twenty-First Amendment has in fact largely relieved the states of the limitations set by the Commerce and Supremacy clauses of the Constitution of the United States, insofar as regulations pertaining to traffic in intoxicating liquors is concerned. On the other hand, the Twenty-First Amendment does not increase the territorial jurisdiction of the states and does not empower the states to prohibit, impose conditions on, or regulate, the liquor traffic in territory which is under the exclusive jurisdiction of the Federal government. Collins v. Yosemite Park Co., 304 U.S. 518, 82 L.Ed. 1502, 58 S.Ct. 1009 (1941); Hostetter v. Idlewild Liquor Corp., 377 U.S. 324, 12 L.Ed. 2d 350, 84 S.Ct. 1293 (1964); Dept. of Alcoholic Beverage Control v. Ammex Warehouse, 378 U.S. 124, 12 L.Ed.2d 743, 84 S.Ct. 1657 (1963); Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 88 L.Ed. 814, 64 S.Ct. 622 (1944); Epstein v. Lordi, 261 F.Supp. 921 (D.C. N.J., 1966), affirmed, 88 S.Ct. 106 (1967). 15 C.J.S. 739, Commerce, Sec. 99; 48 C.J.S. 164, Intoxicating Liquors, Sec. 33.

The sovereign states possess jurisdiction of the air space above their territories and may exercise police powers therein except where the same have been granted to or assumed or preempted by the federal government. 2 C.J.S. 903, Aerial Navigation, Sec. 3, and authorities there cited. Likewise, state statutes regulating the operation of aircraft have been held constitutional as within the police power of the state, and as not violating the commerce clause of the federal constitution. 2 C.J.S.

905, Aerial Navigation, Sec. 8, and authorities there cited.

Congress claims only concurrent jurisdiction with the states to regulate the legality or illegality of acts performed while in flight over a state's territory. The committee report which accompanied the most recent amendment of the penal provisions of the Federal Aviation Act of 1958 (49 U.S.C. 1472) makes this very clear. Said report reads in part:

> "The Committee of Interstate and Foreign Commerce, to whom was referred the bill (H.R. 8384) to amend the Federal Aviation Act of 1958 to provide for the application of Federal criminal law to certain events occurring on board aircraft in air commerce, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

> " . . .

> " . . . /I_7n the case of crimes committed in the airspace over States of the United States, most of the acts with which this legislation deals would be violations of the laws of one or more of such States. However, crimes committed in the airspace over a State pose peculiar and extremely troublesome problems of enforcement which are not present when such crimes take place on the ground. When a criminal moves the scene of his activity to an aircraft in flight he is able to take advantage of practical and physical difficulties that may seriously impair effective apprehension and prosecution, particularly if the offense is one against the law of a State rather than against Federal law. Furthermore, in the case of offenses against State law, State officials are often faced with an insuperable task in trying to establish that a particular act occurred in the airspace over that State -- and in some cases, under State law, it would be necessary to prove that the offense was committed over a particular county in the

State. It is obvious that such proof may be very difficult and often impossible if the offense is committed on a jet aircraft traveling at 600 miles per hour at an altitude of 30,000 feet.

"The offenses punishable under this legis-lation would not replace any State jurisdiction but would, where both Federal and State law provided for punishment for the same act, be in addition to the State criminal law.

" . . .

"As is well known, the Federal Government does not provide a general criminal code for all crimes committed in the United States. That is the province of the various States. However, criminal codes of the States are at times sup-plemented by Federal law in fields where the Federal Government has responsibilities.

"We wish to emphasize that it is not our in-tent to divest the States of any jurisdiction they now have. This legislation merely seeks to give the Federal Government concurrent jurisdiction with the States in certain areas . . .

" . . .

"The present law relating to crimes aboard aircraft in flight follows the normal rule, which is that the offense is dealt with under the law of the State where the offense occurs.

"One difficulty here is that the State above which the crime may have been committed is often not the State in which the aircraft lands. The second State has no jurisdiction, and cannot even arrest the criminal. If the State over whose territory the crime occurred is disposed to act, it first must collect the evidence necessary to establish that a crime has been committed within its jurisdiction. This evidence, however, is hard to gather when the witnesses on board the air-

craft disperse after landing. Assuming that an indictment is returned in the first State, there is still the question of extradition and not all crimes are extraditable.

"In contrast, if the crime also involved violation of a Federal law, the offender could be taken into custody by Federal law-enforcement agents when the aircraft lands and criminal prosecution instituted.

"This, we want to make clear, does not preempt any State jurisdiction but would only supplement it." 2 U.S. Code and Administrative News (87th Cong., 1st Session, 1961) 2563. (Emphasis added.)

In view of this clear declaration of legislative policy that state and federal penal laws are to operate concurrently in the airspace over the states, it would take an equally clear exception from this general policy to allow commercial airlines to perform with immunity while in-flight over a state, such acts with regard to intoxicating liquors as would otherwise be defined as criminal under state law. Otherwise, the general policy would control, and it could not be held that state penal laws apply only piecemeal, to define as crimes some acts or omissions occurring in the airways, but that penal laws relating to liquor are in some mysterious special category.

That portion of the Federal Aviation Act of 1958 which sets up the office of Federal Aviation Administrator provides, inter alia, that he shall promote air safety "by prescribing . . . minimum standards . . . to provide adequately for national security and safety in air commerce." 49 U.S.C. 1421(a)(6).

Pursuant to such authority the following regulation has been issued by the Administrator:

"Section 121.575 - Alcoholic Beverages

"(a) No person may drink any alcoholic beverage aboard an aircraft unless the certificate holder operating the aircraft has served that beverage to him.

"(b)  No certificate holder may serve
any alcoholic beverage to any person aboard
any of its aircraft if that person appears
to be intoxicated.

"(c)  No certificate holder may allow
any person to board any of its aircraft if
that person appears to be intoxicated.

"(d)  Each certificate holder shall,
within five days after the incident, report
to the administrator the refusal of any
person to comply with paragraph (a) of this
section, or any disturbance caused by a per-
son who appears to be intoxicated aboard any
of its aircraft."

It is argued on behalf of interested airlines that the
above quoted provision reflects an authorization from the
Federal Aviation Administrator to federally certificated
airlines that would supersede state liquor laws.  Such an
interpretation cannot be supported under recognized canons
of construction which are applied to statutory and adminis-
trative provisions.  In this regard, we note that the pro-
vision does not on its face purport to depart from the
general policy which would allow state and federal penal
laws to operate concurrently in the air space above the
states.  It should therefore be harmonized with general policy
by reading the authorization to regulate sale and service of
liquor which first meets the conditions imposed by state penal
laws.  Assuming arguendo that the administrative regulation
should be read as a departure from general policy, and as pro-
viding immunity to the airlines from state penal laws, the pro-
vision would not stand as an exception to the general policies
provided for by the United States Congress, but must fall, since
an administrative agency cannot enact policy inconsistent with
policy provided by the Congress.

The Federal Congress in directing the Federal Aviation
Administrator to issue safety regulations, - the Federal
Aviation Administrator in issuing such regulations, - and
the Texas Legislature in enacting Subdivision 5, Article
46c-6, Vernon's Civil Statutes (the provision of the Texas
Aeronautics Act  adopting federal safety regulations), - were
each directly concerned with defining and enumerating acts

or omissions in flight which should be considered unsafe.
At other times both State and Federal Governments have been
directly concerned with defining and enumerating acts or
omissions which should be considered illegal or prohibited.
We are not here concerned with the issue of whether certain
acts are compatible with the minimum standards of safety set
by the Federal Government, but rather we are concerned with
the issue of whether the acts in question are legal under
state penal law which applies concurrently with federal penal
law in the airspace over the State of Texas.

In 48 C.J.S. 236, Intoxicating Liquors, Sec. 121, the
rule of construction generally applied to state legislation
regulating alcoholic beverages is stated as follows:

> "Where the sale of intoxicating liquors is
> not prohibited, but is made subject to license,
> as a general rule all persons who engage in the
> business of selling intoxicating liquors, or who
> make such selling a part of their business, or
> who follow a business which customarily includes
> such selling, must procure a license . . ."

Article 666-4, Vernon's Penal Code, provides in part:

> "It shall not be unlawful to . . . sell,
> import, export, transport, distribute, ware-
> house, store, possess, /or 7 possess for the
> purpose of sale . . . any liquor in this State,
> . . . provided that the right or privileges
> so to do are granted by any provision of this
> Act . . . Any act /of the nature described 7
> done by any person which is not granted in
> this Act is hereby declared to be unlawful."

A similar prohibition against the unlicensed sale, etc.
of "beer" appears in Article 667-3, Vernon's Penal Code.
Moreover, the legislature would hardly have bothered to pro-
vide for licenses under which various intoxicating beverages
could lawfully be sold, etc. if it was intended that such
beverages could lawfully be sold without a license.

A reading of the entire Texas Liquor Control Act clearly
indicates that Texas follows the general rule stated above
and beverages of intoxicating alcoholic content were only to
be commercially dealt with in this State in such a manner as

has been specifically authorized by the Texas legislature --
i.e., by licensees acting under the control and supervision
of the Texas Liquor Control Board.

Several provisions of the Texas Liquor Control Act
which directly relate its coverage to aircraft make it clear
that the act was to extend to aircraft. See, for example,
Article 666-15(12) (which, we recently discussed in Attorney
General's Opinion M-26 (1967)), which authorizes the Texas
Liquor Control Board to issue a carriers permit to federally
certificated airplane lines to transport liquor. See also
Article 666-17(15) which is quoted and discussed infra in
connection with our answer to your fifteenth, sixteenth and
seventeenth questions.

Although the legislature has provided for permits author-
izing carriage or transportation of liquor by commercial air-
plane lines, no permit or license has been authorized, which
would allow the sale or service of alcoholic beverages aboard
airlines while in-flight over the State.

Pursuant to the above discussion and authorities cited,
your first question is therefore answered in the affirmative
-- i.e., it is presently unlawful for an employee of a com-
mercial airline to sell liquor or beer in the air above the
State of Texas since such traffic in intoxicating liquors is
permitted within this state only as has been specifically
authorized by the legislature; sales in the airspace above
the state are subject to state laws; and there is presently
provided no license or permit by which sales of intoxicat-
ing beverages aboard aircraft may be legally conducted in
Texas.

Your second and third questions are stated as follows:

"Question 2. Is it unlawful for an em-
ployee of a commercial airline to sell liquor
or beer, which liquor or beer was not manufactured
by the process of distillation and does not con-
tain distilled spirits, to a passenger inside an
airplane, which airplane is owned by such com-
mercial airline and is in the air above the State
of Texas  at the time of the sale and is in route
from a point in Texas to a point outside of Texas?

"Question 3. Is it unlawful for an em-
ployee of a commercial airline to sell liquor
or beer, which liquor or beer was not manufactured
by the process of distillation and does not con-
tain distilled spirits, to a passenger inside an
airplane, which airplane is owned by such com-
mercial airline and is in the air above the State
of Texas at the time of the sale and is in route
from a point outside of Texas to a point in Texas?"
(Emphasis added.)

Questions 2 and 3 are answered in the affirmative
pursuant to the discussion and authority cited in answer
to the first question. The reach of Texas Penal Laws is
co-extensive with state borders, and the applicability of
such laws would therefore not be affected by the point of
origin or point of destination of an airflight.

In connection with your fourth question you have cited
numerous provisions of the Texas Liquor Control Act. Your
question is then stated as follows:

"Question 4. If your answer to either
Question 1, Question 2, or Question 3 is 'yes'
which of the foregoing provisions of the Texas
Liquor Control Act have been violated?"

There are numerous provisions in the Texas Liquor Control
Act pertaining to illegal sales, illegal possession for the
purpose of sale, illegal transportation, etc., and offenses
are further categorized as to whether they occur in a wet area
or dry area and as to how the precise alcoholic beverage in-
volved is manufactured or chemically composed, the size of
the package in which it is contained, etc. The precise pro-
visions of the Act which might be violated by any given sale
would have to be determined largely upon the particular facts
and circumstances of the individual case.

Your fifth question is stated as follows:

"Question 5. If your answer to either
Question 1, Question 2, or Question 3 is 'yes'
would the State have to prove that the offense
occurred in a certain county for the purpose
of establishing venue for prosecution?"

Article 13.17, Vernon's Code of Criminal Procedure provides:

"An offense committed on board a vessel which is at the time upon any navigable water within the boundaries of this State, may be prosecuted in any county through which the vessel is navigated in the course of her voyage, or in the county where the voyage commences or terminates." (Emphasis added.)

There is no provision which would similarly set venue for crimes committed aboard moving aircraft, although a parallel venue provision might prove essential to effective prosecution in some situations. For example, it might prove extremely difficult to prove with particularity the county over which a sale of intoxicating beverages occurred. However, crimes committed aboard moving aircraft must currently be prosecuted under the general penal venue statute, Art. 13.26, Vernon's Code of Criminal Procedure, which provides that:

"If venue is not specifically stated, the proper county for the prosecution of offenses is that in which the offense was committed."

Your fifth question is, therefore, answered in the affirmative, and venue must be established in the county where the offense charged occured in order to prosecute for either an illegal sale or an illegal possession.

Your sixth question is stated as follows:

"Question 6. Is it unlawful for an employee of a commercial airline to sell distilled spirits by the drink to a passenger inside an airplane, which airplane is owned by such commercial airline and is in the air above The State of Texas and is in route between two points in Texas?"

This question is answered in the affirmative pursuant to the discussion and authority cited in answer to the first question posed.

In addition the legislature has directly prohibited sale of liquor by the drink. Article 666-3, Vernon's Penal Code, provides in part:

"(a)  The term 'open saloon' as used in this Act, means any place where any alcoholic beverage whatever, manufactured in whole or in part by means of the process of distillation, or any liquor composed or compounded in part of distilled spirits, is sold or offered for sale for beverage purposes by the drink or in broken or unsealed containers, or any place where any such liquors are sold or offered for sale for human consumption on the premises where sold.

"(b)  It shall be unlawful for any person, whether as principal, agent, or employee, to operate or assist in operating, or to be directly or indirectly interested in the operation of any open saloon in this state." (Emphasis added.)

Your seventh question is stated as follows:

"Question 7.  If your answer to Question 6 is 'yes' would it be necessary to prove that the offense occurred in a certain county in the State of Texas in order to establish venue for the purpose of prosecution?"

Question 7 is answered in the affirmative. Venue must be established in order to prosecute for the illegal sale. See Article 13.26, Vernon's Code of Criminal Procedure, which has been herein quoted in connection with our answer to Question 5.

Your questions eight, nine and ten are stated as follows:

"Question 8.  Is it unlawful for an employee of a commercial airline to possess inside an airplane, which airplane is owned by such commercial airline and is in the air above the State of Texas and is on a flight in route between two points in Texas, a quantity of liquor or beer from which was taken liquor or beer that was sold to a passenger while such airplane was on such flight?

"Question 9.  Is it unlawful for an employee of a commercial airline to possess inside an airplane, which airplane is owned by such commercial airline and is on the ground at an air terminal in County X of the State of Texas, a quantity of liquor or beer from which was taken liquor or beer that was sold to a passenger inside such airplane when such airplane was in the air above the State of Texas in route from a point in Texas to the air terminal in County X of the State of Texas?

"Question 10.  Is it unlawful for an employee of a commercial airline to possess inside an airplane, which airplane is owned by such commercial airline and is on the ground at an air terminal in County X of the State of Texas, a quantity of liquor or beer from which was taken liquor or beer that was sold to a passenger inside such airplane when such airplane was in the air above the State of Texas in route from a point outside of Texas to the air terminal in County X of the State of Texas?"

The above questions describe very strong cases of circumstantial evidence tending to establish possession in a dry area for the purpose of sale of liquor or beer or possession in a wet area of liquor or beer for the purpose of sale without a permit of the class required for such privilege.  This would be so even though the airline held a carrier's permit under Article 666-15(12) because the Acts above set out constitute something more than the transporting authorized by such permit.  The past course of action described strongly indicates that possession is for the purpose of sale and proof of such past course of action would be sufficient to support a jury finding that the intent of the accused was to unlawfully sell in the future the liquor or beer found in his possession.  A conviction based on such jury finding would be sustained.  Brooks v. State, 137 S.W.2d 768 (Tex. Crim. 1940); Morrison v. State, 230 S.W.2d 808 (Tex. Crim. 1950).  However, no act of possession of intoxicants is illegal per se under Texas law  and it is necessary for a presumption of illegal purpose to be drawn by the fact finding body in order to sustain a conviction.  Walton v. State, 163 S.W.2d 203, 204 (Tex. Crim. 1942); De Hart v. State, 36 S.W.2d 168 (Tex. Crim. 1931);

Piper v. State, 34 S.W.2d 283 (Tex. Crim. 1930). Proof of prior sales would be sufficent to establish a prima facie case of possession for the purpose of sale but a jury or other finder of fact would not be obligated to convict on such evidence.

Your questions eleven and twelve are stated as follows:

"Question 11. Where an accused is being prosecuted for unlawful possession of liquor or beer for the purpose of sale in a wet area without a permit or license, is evidence of a recent prior unlawful sale of alcoholic beverages by the accused in a dry area admissible to prove the intent of the accused to unlawfully sell the liquor or beer in question in a wet area without a permit or license.

"Question 12. Where an accused is being prosecuted for unlawful possession of liquor or beer for the purpose of sale in a dry area, is evidence of a recent prior unlawful sale of alcoholic beverages by the accused in a wet area without a permit or license admissible to prove the intent of the accused to unlawfully sell the liquor or beer in question in a dry area?"

The law is stated at 48 C.J.S. 477, Intoxicating Liquors, Sec. 346b, insofar as is here pertinent as follows:

"In a prosecution for keeping or possessing intoxicating liquors with an unlawful intent or purpose, such as an intent to sell unlawfully, all competent evidence tending to show the commission of the offense by accused or calculated to throw light on the lawfulness or unlawfulness of his possession or on the intent with, or purpose for, which the liquors were kept or possessed, including evidence of matters before /or anterior to the time of 7 . . . the offense is admissible, provided it is not too remote and is kept within reasonable limits in point of time.

"The facts admissible in evidence include
unlawful sales by accused on recent occasions;
. . . the ordering or receiving of, or stocking
up with, intoxicating liquors in quantities
larger than accused himself might reasonably
consume; /and 7 the indebtedness of accused for
large purchases of liquor . . . Evidence is also
admissible to show the condition, appointments,
fixtures and surroundings of the room or place
where the liquors were kept . . ."

The general rules which pertain to the admissibility of
evidence which reflect crimes committed by the accused other
than the crime for which he is on trial are relevant. See
McCormick on Evidence (West Hornbook Ed. 1954) pps. 326-333
for a more thorough discussion than is here provided.

Pursuant to the above discussion, questions eleven and
twelve are answered in the affirmative. Proof of a prior il-
legal sale would be admissible to show intent, motive, scheme,
etc., if kept within reasonable limits within point of time
without regard to whether such illegal sale occurred in a wet
or dry area. Possession for the purpose of sale will consti-
tute the offense, without proof of whether the intent is to
sell in a dry or a wet area.

Your question number thirteen is stated as follows:

"Question 13. Is it unlawful for an em-
ployee of a commercial airline company to pos-
sess in a storage area at an air terminal, which
storage area has been rented by the commercial
airline company, a quantity of liquor or beer
which is to be placed on board an aircraft where
it is to be sold to passengers on board the air-
craft while the aircraft is in flight?"

As was stated in response to questions eight, nine and
ten, mere possession of intoxicating liquor or beer is not
per se illegal under Texas law and if merely being transported
under a carrier's permit the possession described would be
legal; otherwise, the purpose of possession would depend upon
the inference drawn from the evidence by the fact finding body.
We observe that the question is not limited by stating that sub-
sequent sales will take place in Texas. In order for such pos-

session for the purpose of sale to constitute an offense, the possession must be for the purpose of sale in Texas.

Your question number fourteen is stated as follows:

"Question 14. Where liquor or beer is possessed by an employee of a commercial airline company in a storage area at an air terminal, which storage area has been rented or leased or is owned by such commercial airline company, may such liquor or beer be deemed to be 'stored' within the meaning of Sections 4(a) or 4(b) of Article I of the Texas Liquor Control Act (Article 666-4, sec. (a) and sec. (b) of Vernon's Texas Penal Code)?"

Question fourteen is answered in the affirmative, unless the airplane line has been issued a "Carrier Permit" by the Texas Liquor Control Board, pursuant to Article 666-15(12) Vernon's Penal Code, and the storage is in furtherance of such permit. Whether such storage by an employee of the airplane line is in furtherance of such permit, or is stored or possessed for the purpose of making illegal sales in Texas, is a question of fact.

Your questions numbers fifteen, sixteen and seventeen are stated as follows:

"Question 15. Is it unlawful for an employee of a commercial airline company that is a bona fide common carrier engaged in interstate commerce to sell a container of liquor that contains less than six ounces of liquor to a passenger inside an airplane, which airplane is owned by such commercial airline company and is in the air above the State of Texas at the time of the sale and is in route between two points in Texas?

"Question 16. Is it unlawful for an employee of a commercial airline company that is a bona fide common carrier engaged in interstate commerce to sell a container of liquor that contains less than six ounces of liquor to a passenger inside an airplane, which airplane is owned by such commercial airline company and is in the air

above the State of Texas at the time of the sale and is in route from a point outside of Texas to a point in Texas?

"Question 17. Is it unlawful for an employee of a commercial airline company that is a bona fide common carrier engaged in interstate commerce to sell a container of liquor that contains less than six ounces of liquor to a passenger in an airplane, which airplane is owned by such commercial airline company and is in the air above the State of Texas at the time of the sale and is in route from a point in Texas to a point outside of Texas?"

These questions are answered in the affirmative, pursuant to the discussion and authorities cited in connection with questions one, two, and three.

In addition, the legislature has directly prohibited the retail sale of any liquor produced in whole or in part by the process of distillation, in containers of less than one-half pint, and has prohibited the retail sale of malt and vinous liquor in containers of less than six (6) ounces. Article 666-17(15), Vernon's Penal Code.

Your question number eighteen is stated as follows:

"Question 18. Where an employee of a commercial airline company that is a bona fide common carrier engaged in interstate commerce sells a container of liquor that contains less than six ounces of liquor to a passenger inside an airplane, which airplane is owned by such commercial airline company and is in the air above the State of Texas at the time of the sale, may the remaining containers of liquor that contain less than six ounces of liquor and are in the possession of such employee inside such airplane, be seized under a proper search warrant on the theory that such remaining containers of liquor are possessed for the purpose of sale in Texas in violation of Section 17 (15) of Article I of the Texas Liquor Control Act (Article 666-17, (15) of Vernon's Texas Penal Code)?"

Article 666-17(15) provides in part:

"(15)  It shall be unlawful for any person to import, sell, offer for sale, barter, exchange, or possess for the purpose of sale any liquor the container of which contains less than one-half (½) pint; provided however, that in the case of malt or vinous liquor a six (6) ounce container shall be the minimum; provided further that any bona fide common carrier of persons, engaged in interstate commerce, may be authorized by the Board to transport liquor in containers of less than one-half (½) pint but not for sale, use or consumption in Texas . . ."  (Emphasis added.)

As a bona fide common carrier of persons engaged in interstate commerce, the airlines may be authorized by the Texas Liquor Control Board to transport liquor in containers of less than one-half (½) pint, but not for sale, use or consumption in Texas.

In answer to question 18, you are advised that once it becomes apparent that the malt, vinous or spirituous liquor is destined for sale, use, distribution, or consumption within the State of Texas or if the authorization provided for in the underscored portion of Article 666-17(15), quoted next above, has not been obtained from the Texas Liquor Control Board, then the beverage would be illicit beverage and subject to seizure by the State under a proper search warrant.  Question 18 is therefore answered in the affirmative.

Your questions numbers nineteen, twenty and twenty-one relate to the sufficiency of a complaint or affidavit for the issuance of search warrants.  Statutory provisions directly pertinent to the questions presented are set out below.

Article 666-20, Vernon's Penal Code, provides in part:

"A search warrant may issue under Title 6 of the Code of Criminal Procedure for the purpose of seizing and destroying any alcoholic beverage possessed, sold, transported, . . . kept, or stored in violation of this Act . . .

> "Search warrants may be issued by any
> magistrate upon the affidavit of a credible
> person, setting forth the name or description
> of the owner or person in charge of the prem-
> ises to be searched, or stating that his name
> and description are unknown, the address or
> description of the premises and showing that
> the described premise is a place where some
> specified phase or phases of this act are be-
> ing violated.
>
> "Except as herein provided the applica-
> tion, issuance, and execution of any such war-
> rant and all proceedings relative thereto
> shall conform as near as may be to the pro-
> visions of Title 6 of the Code of Criminal
> Procedure . . ."

Article 18.09, Vernon's Code of Criminal Procedure,
provides in part:

> "A warrant to search any place suspected
> to be one where . . . implements are kept for
> the purpose of aiding in offenses may be issued
> by a magistrate on written sworn complaint,
> setting forth:
>
> "1.  A description of the place suspected;
>
> 2.  A description of the kind of property
> alleged to be concealed at such place, or
> the kind of implement kept;
>
> 3.  The name, if known, of the person sup-
> posed to have charge of such place, where
> it is alleged that it is under the charge
> of any one;
>
> 4.  When it is alleged that implements are
> kept at a place for the purpose of aiding
> in the commission of the offenses, the
> particular offense for which such imple-
> ments are designed must be set forth; and

> 5.  Such other facts as may be required by
> Article 18.01 to establish probable cause."

Article 18.01, Vernon's Code of Criminal Procedure, provides:

> "A 'search warrant' is a written order,
> issued by a magistrate, and directed to a peace
> officer, commanding him to search for personal
> property, and to seize the same and bring it
> before such magistrate; or it is a like written
> order, commanding a peace officer to search a
> suspected place where it is alleged stolen pro-
> perty is commonly concealed, or implements kept
> for the purpose of being used in the commission
> of any designated offense.
>
> "No search warrant shall issue for any pur-
> pose in this State unless a sworn complaint there-
> for shall first be filed with the issuing magis-
> trate setting forth sufficient facts to satisfy
> the magistrate that probable cause does in fact
> exist for its issuance."

Article 15.05, Vernon's Code of Criminal Procedure, provides:

> "The complaint shall be sufficient, without
> regard to form, if it have these substantial re-
> quisites:
>
> "1.  It must state the name of the accused,
> if known, and if not known, must give some
> reasonably definite description of him.
>
> 2.  It must show that the accused has com-
> mitted some offense against the laws of the
> State, either directly or that the affiant
> has good reason to believe, and does believe,
> that the accused has committed such offense.
>
> 3.  It must state the time and place of the
> commission of the offense, as definitely as
> can be done by the affiant.

4. It must be signed by the affiant by writing his name or affixing his mark."

Provisions of this nature are discussed in 48 C.J.S. 617, Intoxicating Liquors, Sec. 393c, insofar as here pertinent as follows:

"Under the various constitutional and statutory provisions protecting against unreasonable searches and seizures, an application for a search warrant for a violation of the liquor laws must include a showing of probable cause. For such purpose, probable cause consists of such facts and circumstances as would reasonably induce the belief that accused is guilty of a liquor law violation or that a criminal violation of the liquor laws is being committed on the premises sought to be searched or that property subject to forfeiture is located on the premises sought to be searched.

". . . The existence of probable cause does not depend on the facts actually disclosed on the search, but on the showing made on the application for the warrant . . .

". . .

"The application may sufficiently establish probable cause by setting forth the evidentiary facts on which the application is based . . . An Application which merely alleges legal conclusions is insufficient."

Your questions numbers nineteen, twenty and twenty-one are stated as follows:

"Question 19. If it is unlawful for an employee of a commercial airline company to sell any type of alcoholic beverage inside an airplane that is owned by such commercial airline company and is in the air above the State of Texas, would a complaint or affidavit of a passenger who purchased such alcoholic beverage as a result of

such unlawful sale of such alcoholic beverage setting forth the details of the sales transaction provide sufficient probable cause for a magistrate to issue a search warrant for the search of such airplane and a seizure, as a result of such search, of any alcoholic beverages in possession of any employee of such commercial airline that are found on such airplane?

"Question 20. If your answer to Question 19 is 'yes' would such complaint or affidavit of the passenger who purchased an alcoholic beverage inside an airplane in the air above the State of Texas as a result of an unlawful sale of such alcoholic beverage, setting forth the details of the sales transaction, be insufficient if it failed to state the County in which the sale took place?

"Question 21. If it is unlawful for an employee of a commercial airline company to sell any type of alcoholic beverages inside an airplane that is in the air above the State of Texas, would a complaint prepared by a passenger, who purchased such alcoholic beverages as a result of such unlawful sale of such alcoholic beverages, setting forth the details of the unlawful sales transaction, be insufficient to support the issuance of an arrest warrant, or to support a criminal prosecution, if such complaint failed to state the County in which the unlawful sale took place?"

While question twenty is somewhat ambiguous, we assume that in both questions nineteen and twenty the affidavit is made by a credible person and in addition to setting forth the details of the unlawful sales transaction, the affidavit further states that liquor is possessed by the airline company for the purpose of making illegal sales in Texas.

Question nineteen is answered in the affirmative in accordance with the applicable statutes quoted above and the discussion in connection with our answers to questions eight, nine, and ten, and questions eleven and twelve above.

Question twenty is answered in the negative.  It is unnecessary for the complainant to allege the precise Texas County where the unlawful sale occurred when the unlawful sale is alleged as an evidentiary fact only (which tends to establish a present violation of the law prohibiting the possession of liquor for the purpose of sale within the jurisdiction of the magistrate). To establish probable cause for the warrant to issue the complainant should in his affidavit identify the sale as one taking place over the State (as by stating that the sale took place between two Texas points, or that the sale took place after an announcement had been made that the aircraft was within the State, etc.)

Question twenty-one is answered in the affirmative, as it apparently relates to a complaint which would be used to initiate a prosecution of the employee for making an illegal sale.  Such a complaint must specify the County in which the sale occurred in order to confer jurisdiction upon the magistrate of such county to issue a warrant of arrest, or to support a criminal prosecution.

However, if the import of this question is directed to a charge of possessing liquor for the purpose of sale, and the prior sale is merely evidentiary on the question of whether the liquor is possessed for the purpose of sale, then this question is answered in the negative, for the reasons stated in answer to question 20.

Your final question is stated as follows:

"Question 22.  Where a commercial airline charges a passenger for a ride on one of its airplanes and thereafter when the passenger is inside the airplane in air above the State of Texas an employee of such commercial airline serves a glass of liquor to such passenger free of charge, does such transaction constitute a sale of liquor by such employee of the commercial airline to such passenger?"

We are unable to give an unqualified answer to this question either in the affirmative or negative.  Depending upon the circumstances presented in the particular case, a court or jury could either find that the charge of serving alcoholic beverages was added into the price of the airline ticket and an indirect

"sale" took place in violation of the law or that the drinks were in reality actually free as a part of the service given to passengers and no "sale" took place.

### S U M M A R Y

It is presently unlawful for an employee of a commercial airline to sell intoxicating alcoholic beverages in the air above the State of Texas. If the sale of intoxicating alcoholic beverages takes place in the air space over state territory, state law is applicable and such sale is illegal without regard to the point of destination or point of origin of the airflight.

Venue for the purpose of prosecuting offenses (and jurisdiction for issuance of a warrant) must be laid in the county where the offense charged occurs. In the case of prosecution for illegal possession for the purpose of sale, venue (and jurisdiction for issuance of a warrant) is within any county where intoxicating alcoholic beverages are possessed for the purpose of illegal sale. In the case of prosecution for an illegal sale, venue for trial (and jurisdiction for the issuance of a warrant of arrest) is in the county where the sale occurred.

An unlawful sale may be properly alleged as an evidentiary fact in an affidavit for the issuance of a search warrant (and may be proved in a prosecution) for possession for the purpose of illegal sale, since such a prior sale would show intent, motive, scheme, etc. In prosecutions for possession of liquor for the purpose of sale, a prior sale by the defendant, anywhere in Texas, may be shown as evidentiary on the question of the purpose of the possession.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Larry J. Craddock
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
W. V. Geppert
Harold Kennedy
John Banks
Robert Lattimore

A. J. Carubbi, Jr.
Executive Assistant