**AVION EXPORT COMPANY, Plaintiff,**

v.

**Donald D. COOK, Director of Liquor Control of the State of Ohio, Defendant.**

**Civ. A. No. 67–43.**

United States District Court,
S. D. Ohio, E. D.

Sept. 28, 1970.

Leo D. Morand, Cincinnati, Ohio, for plaintiff.

Paul W. Brown, Atty. Gen., for defendant.

Before CELEBREZZE, Circuit Judge, and WEINMAN and KINNEARY, District Judges.

## OPINION

KINNEARY, District Judge.

Plaintiff, Avion Export Company (herein Avion), seeks a declaration that Sections 4301.021, 4301.10 and 4307.01, Ohio Revised Code, are unconstitutional as applied to its proposed operation at the Hopkins International Airport, Cleveland, Ohio (herein Airport). Avion also seeks injunctive relief.

The jurisdiction of the Court was invoked and arises under Title 28, United States Code, Sections 1331, 2281, 2282 and 2284 and Article I, Section 8, Clause 3 of the Constitution of the United States.

This three judge court was designated pursuant to the determination that the requisites for the convening of such a court were present on the face of the complaint.

This action is now before the Court for decision following a hearing on the merits.

Avion is a Canadian partnership authorized to do business in Ohio. It proposes to purchase liquor from bonded wholesalers located outside of the State of Ohio who deal in tax free liquors for export. The liquors are to be shipped in bond to a bonded warehouse located at the Airport by bonded truckers under the supervision of the Bureau of Customs.

At the Airport, Avion plans to lease space from the City of Cleveland to operate its business. Avion proposes to maintain a store for the sale of liquors to persons holding tickets and boarding passes for flights to Canada in the foreign passenger service wing of the Airport.

The liquor would be displayed in Avion's store. Persons entering the foreign passenger service wing of the Airport could order liquor after presenting an airlines ticket for passage to Canada and a boarding pass. The purchaser would receive a receipt upon payment of the purchase price. The receipt would contain a warning that the liquor is for consumption outside the continental United States. The purchaser would not receive the liquor in the store. Instead, he would go to the boarding area to pick it up.

The liquor would be stored in the customs import warehouse and then be moved from the warehouse by a bonded cart man to the store. The liquor would then be transported to the holding area. When the gate at the holding area is opened for passengers to leave that room and walk across the runway to the airplane, the purchaser would exchange his receipt for the liquor. Customs officers would supervise the distribution of the liquor. The purchaser would then presumably take the liquor from the holding area, through the gate, across a portion of the runway and on to the airplane.

This proposed plan constitutes a sale and delivery of the liquor in the State of Ohio.

The Airport is located on land within the jurisdiction of the State of Ohio and the City of Cleveland. The United States has no jurisdiction over the land.

This proposed plan of operation was presented to the United States Department of the Treasury, Bureau of Customs and the Ohio Department of Liquor Control. In early 1966 the Bureau of Customs gave its approval. However, the Ohio Department of Liquor Control informed plaintiff that the proposed operation would violate Sections 4301.021 and 4301.10 of the Ohio Revised Code and stated that it would use every legal resource to prevent the plaintiff from operating under the proposed plan.

Avion contends that it would be operating under Section 311 of the Tariff Act of 1930 (19 U.S.C.A. § 1311) which provides that liquor manufactured for export may be stored in bonded warehouses and exported from the United States tax and duty free. See, Hostetter v. Idlewild Bon Voyage Liquor Corp.,

377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964). It further contends that the Ohio statutes which, as construed by the Ohio Department of Liquor Control, prevent it from carrying on the business of exporting liquor in bond are in violation of Article I, Section 8, Clause 3 of the Constitution of the United States which provides that Congress shall have the power to regulate commerce with foreign nations.

Defendant contends that under Avion's proposal the liquor would be imported into and sold in Ohio in violation of the Twenty-First Amendment to the Constitution of the United States.

Both parties rely upon Hostetter v. Idlewild Bon Voyage Liquor Corp., *supra*. In *Hostetter*, the liquor corporation sold bottled wines and liquor to passengers departing John F. Kennedy International Airport for foreign countries. Its offices were leased from the Port of New York Authority. At the corporation's store orders were accepted from passengers with tickets and boarding passes. The purchaser received a receipt upon payment of the purchase price. The liquor was transferred to the departing aircraft. It was not delivered to the passenger until arrival in a foreign land. The Supreme Court held that the Twenty-First Amendment did not abridge the Commerce Clause to the extent that the State of New York could prevent the passage of bonded liquor through the state when it was to be delivered to consumers in foreign countries. Hostetter v. Idlewild Bon Voyage Liquor Corp., *supra* at 333, 84 S.Ct. 1293, 12 L.Ed.2d 350.

*Hostetter* is clearly distinguishable from the present case. Here the liquor is delivered to the passenger in Ohio. The purchaser has full possession and control of the liquor before boarding the airplane. Thus, it would be possible for the passenger to consume the liquor in Ohio.

Avion also relies upon the three judge court decision in Ammex Warehouse Co. v. Department of Alcoholic Bev. Con-

trol, 224 F.Supp. 546, 548 (1963), aff'd per curiam, 378 U.S. 124, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964). In *Ammex* the plaintiff operated a bonded warehouse and store in California one mile from the Mexican border. A purchaser would pay for his liquor purchase in the store and receive a receipt. The bonded liquor was then transported by customs officials to a sixty foot strip of soil on the United States side of the border which was designated a smuggling control area by the President of the United States. The liquor was then given to the purchaser by a United States Export Officer moments before he entered Mexico. Alternatively, Ammex proposed that, if this method of operation were unacceptable, it could build a booth on the border with a window through which a customs official could physically hand the liquor to the purchaser after the purchaser had crossed into Mexico.

The Court held that the *custody* of the liquor passed to the purchaser just before he entered Mexico, but that legal possession remained in the customs officer until the purchaser crossed the border. The Court's decision rested at least in part upon its view that there would be no rational legal distinction between a customs officer physically handing the liquor to the purchaser who was standing in Mexican territory and handing the liquor to a purchaser moments before he crossed into Mexico. Ammex Warehouse. Co. v. Department of Alcoholic Bev. Con., *supra* at 549. Thus, the *Ammex* case differs from the instant case in that for all practical purposes possession was given to the purchaser in a foreign country in the former instance whereas in this case possession would vest in the purchaser while he was still in the State of Ohio and would indeed remain in the State of Ohio until the aircraft passed over the Canadian border.

The Twenty-First Amendment permits a state to enact a comprehensive and restrictive statutory scheme regulating traffic in alcoholic beverages. State

Board of Equalization v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L. Ed. 38 (1936). A state may monopolize the manufacture and sale of alcoholic beverages or exact a fee for their importation. State Board v. Young's Market Co., *supra*.

■ Ohio is a monopoly state which has enacted a comprehensive regulatory scheme. Sections 4301.021, 4301.10 and 4307.01, Ohio Revised Code are an integral part of its regulation of alcoholic beverages. Section 4301.021 empowers the Director of Liquor Control to exercise all powers necessary to enforce Ohio's liquor control law. Section 4301.10 contains the licensing provisions of the Ohio law and provides for a state monopoly over the sale of liquor at retail. Section 4307.-01 is a definitional section which excludes from regulation transactions in interstate or foreign commerce. These sections clearly do not impinge on Congress's power to regulate interstate and foreign commerce and are consonant with the Twenty-First Amendment. Any exceptions to this regulatory scheme would impair the overall enforcement of its liquor control laws.

■ The question presented is whether Ohio may constitutionally apply this regulatory scheme to Avion's proposed operation.

The Court holds that the proposed operation would result in delivery, possession and possible use of intoxicating liquors in the State of Ohio within the meaning of the Twenty-First Amendment to the Constitution of the United States. Thus, the proposed operation falls within the State of Ohio's constitutional authority under the Twenty-First Amendment to regulate intoxicating liquors. There is no conflict with Article 1, Section 8, Clause 3 of the Constitution of the United States because the delivery of the liquor would not take place in interstate commerce, but within the State of Ohio.

The prayer for injunctive relief is denied.