AMMEX–CHAMPLAIN CORP., Plaintiff,

v.

Norman GALLMAN et al., Defendants.

AMMEX WAREHOUSE COMPANY, INC., Plaintiff,

v.

Norman GALLMAN et al., Defendants.

Nos. 72 Civ. 306, 72 Civ. 310.

United States District Court, N. D. New York.

March 16, 1973.

Lovejoy, Wasson, Lundgren & Ashton, New York City, Hancock, Estabrook, Ryan, Shove & Hust, Syracuse, N. Y., for plaintiffs; Walter C. Lundgren, New York City, Joseph H. Murphy, Syracuse, N. Y., John F. Kelly and James J. Murray, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of State of N. Y., for defendants; Thomas P. Zolezzi, Kenneth F. Connolly, Albany, N. Y., of counsel.

Before KAUFMAN, Circuit Judge, and FOLEY and PORT, District Judges.

## MEMORANDUM DECISION

IRVING R. KAUFMAN, Circuit Judge:

Ammex Warehouse Co. and Ammex-Champlain Corp. are engaged in the business of selling cigarettes and liquor at eight locations [1] to persons entering Canada from New York. Although minor variations occur at each facility, the general scheme of operations may be described as follows. At each location, Ammex has two buildings. One building is a sales office, where sample merchandise is displayed. Persons who are about to cross the border into Canada enter this building and choose and pay for their purchases. No merchandise is delivered at this point. Instead, the customer receives an invoice recording his purchases.[2] He then proceeds to a warehouse, which is lo-

---

1. Ammex Warehouse Co. maintains sales facilities at Buffalo, Niagara Falls, Wellesley Island, Messina, Ogdensburg, Trout River, and Rouses Point. Ammex-Champlain Corp. operates at a single location in Champlain. For convenience, both companies will be referred to collectively as "Ammex."

2. Prominently printed upon the invoice are the words "Articles are sold for EXPORT ONLY. Purchases brought back to the United States must be declared and are subject to duty and/or tax." A sign with identical language is posted in the office.

cated immediately adjacent to the border, where he presents his invoice to an employee of Ammex, who places the merchandise in the customer's vehicle under the supervision of a United States Bureau of Customs Inspector. The warehouse facilities are designed in such a way that a customer can proceed only across the border after he receives his purchases and nowhere else.[3] A Customs Inspector observes each customer cross the border and certifies on a copy of the invoice that the merchandise has been exported.

Ammex's operations are governed by the Tariff Act of 1930, 19 U.S.C. § 1311 *et seq.*, and the alcoholic beverage and tobacco products provisions of the Internal Revenue Code of 1954, 26 U.S.C. § 5001 *et seq.* Pursuant to these statutes, alcoholic beverages and tobacco products which are exported from the United States are exempted from Federal excise taxes and duties. The Bureau of Customs closely supervises Ammex's facilities to insure that all tax-free merchandise actually is exported and that none enters the domestic market. Bureau of Customs personnel are present at Ammex's facilities and, in addition to observing the delivery and export of all merchandise, maintain detailed inventory controls.

The present controversy began in 1971 when, for the first time since Ammex commenced operations in 1963, the New York State Tax Commission, whose three members are the defendants in these cases, assessed state alcoholic beverage, tobacco, and sales taxes—totalling approximately in excess of $1,829,704.58—against Ammex. See Arts. 18, 20, and 28, N.Y. Tax Law (McKinney's 1966). Ammex, claiming that its operations were exempt from state taxation under both the Commerce Clause[4] and the Import-Export Clause[5] of the United

States Constitution, brought these actions in federal court seeking a declaratory judgment that application of the New York taxing statutes to Ammex's export operations was unconstitutional and an injunction preventing any further assessments or collection of the tax. Since the complaints sought a "permanent injunction restraining the enforcement, operation or execution of [a] State statute by restraining the action of [an] officer of such State," a three-judge district court was convened pursuant to 28 U.S.C. § 2281.

Although Ammex's challenge to the New York taxes, at first blush, appears meritorious, *see Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964) (departing airline passengers ordered liquor at a United States airport and received merchandise upon debarking in a foreign country; held not subject to state licensing requirements); *Ammex Warehouse Company of San Ysidro v. Dep't of Alcoholic Beverage Control for the State of California*, 224 F.Supp. 546 (S.D.Cal.1963) (three-judge district court) (operation at California-Mexico border similar to Ammex's New York operations held not subject to state licensing requirements), *aff'd*, 378 U.S. 124, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964) (per curiam, citing to *Hostetter, supra*), we are of the view that at this juncture we are without jurisdiction to consider this claim. Congress has provided that "The district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such state." 28 U.S.C. § 1341. We believe such a remedy is available in the New York courts. N.Y. Civil Practice Law and Rules § 3001 (McKinney's 1970) provides that the state supreme court

---

3. For example, at Champlain, the warehouse area is enclosed within a fence. After leaving the warehouse delivery platform, a customer drives on a one-way road which leads to a gate located at the border. Customers are not permitted to turn around on the road; once merchandise is received, they must leave the warehouse area through the gate and enter Canada.

4. Art. I, § 8, Cl. 3: "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States. . . ."

5. Art. I, § 10, Cl. 2: "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws. . . ."

294

may issue declaratory judgments. There is ample authority that a declaratory judgment action may be employed to challenge imposition of a tax. *See, e. g., Richfield Oil Corp. v. City of Syracuse,* 287 N.Y. 234, 39 N.E.2d 219 (1942); *Hudson Transit Lines, Inc. v. Bragalini,* 11 Misc.2d 1094, 172 N.Y. S.2d 423 (Sup.Ct.1958). Accordingly, Ammex may present its arguments in the state supreme court and seek a declaratory judgment from that court that application of these taxes to Ammex's export operations is unconstitutional.[6] The parties could seek ultimate review in the United States Supreme Court. 28 U.S.C. § 1257. We find unpersuasive Ammex's contention that the apparent inability of the state supreme court to issue an injunctive order barring collection by the State Tax Commission pending a final decision renders a declaratory judgment action inadequate under 28 U.S.C. § 1341. We doubt that the State Tax Commission, after stressing to this court the adequacy of a declaratory judgment action, would attempt to collect any assessed taxes during the pendency of such an action brought by Ammex. Moreover, the State has stipulated before us that no attempt to collect any such taxes will be made until after the final resolution of plaintiffs' declaratory judgment action in the state courts. Accordingly, the present absence of any indication that available state remedies are inadequate requires us to dismiss Ammex's actions for lack of jurisdiction. Of course, Ammex is free to return to federal court if a declaratory judgment action proves inadequate.

So ordered.

---

6. Thus, we need not decide whether an alternate state remedy—judicial review under Art. 78, N.Y. Civil Practice Law and Rules (McKinney's 1970), of an administrative proceeding challenging the tax before the State Tax Commission—is "plain, speedy and efficient." A taxpayer must either pay the assessment or post a bond of equivalent value in order to obtain such review. Moreover, no interest would be paid on cigarette and alcoholic beverage taxes subsequently held to have been assessed illegally.