Charles L. SIMMS and the Woodland
Inn, Inc., Plaintiffs,

v.

Edward A. FARRIS, et al., Defendants.

Civ. A. No. 85–86.

United States District Court,
E.D. Kentucky,
Frankfort Division.

March 3, 1987.

Phillip J. Shepherd, Frankfort, Ky.,
James Park, Jr., Katherine K. Yunker,
Brown, Todd & Heyburn, Lexington, Ky.,
for plaintiffs.

Michael L. Judy, Catherine C. Staib, Frankfort, Ky., Robert Spragens, Jr., Lebanon, Ky., for defendants.

## REVISED OPINION

BERTELSMAN, District Judge:

The court previously entered an Opinion and Judgment dismissing the complaint herein. Because of certain matters raised in a motion to vacate, however, that motion is now sustained, and this revised Opinion is substituted for the original.

This action attacks the validity of a Kentucky statute which regulates the number and location of liquor licenses that may be issued in the unincorporated areas of certain counties in Kentucky. The attack is founded on the contention that the statute effectively grants the first licensee in certain areas a monopoly or anticompetitive advantage contrary to the antitrust laws of the United States. The statute is defended on the grounds of the Twenty-First Amendment and the "state action" exemption to the antitrust laws.

Inasmuch as the court concludes that the statute must be validated pursuant to the Twenty-First Amendment of the Constitution of the United States, it is unnecessary to reach the antitrust arguments.

Plaintiffs in this action are parties who seek a package liquor license (either the issuance of a new license or a transfer of a pre-existing license)[1] to operate a retail outlet in an unincorporated area of Marion County, Kentucky.

Defendants include the Alcoholic Beverage Control Board of Kentucky and its individual members. This Board is charged with the responsibility for issuing retail package liquor licenses in Kentucky.

Other defendants are the owners and operators of Big John's Tavern, Inc., a retail package liquor establishment in Marion County. Big John's Tavern is located in the southern part of Marion County just north of a great expanse of "dry" counties.[2]

The facts necessary to decide this motion are not disputed, thus making the resolution of this matter appropriate on the cross-motions now before the court. To understand the issues and the contentions of the parties with regard thereto, it is necessary to look at the entire statute under consideration.

Prior to a recent amendment, Kentucky Revised Statute 243.230 read as follows:

**243.230. Premises for which retail package and drink licenses may be issued—Exceptions.—**(1) Licenses to sell distilled spirits and wine *by the drink* for consumption on the premises may be issued only for premises located within cities of the first, second or third class, or elsewhere in counties containing a city of the first, second or third class *if those counties maintain an adequate police force* under KRS 70.540 and KRS 70.150 to 70.170.

(2) Notwithstanding any other provision of law, a special license to sell distilled spirits and wine *by the drink* for consumption on the premises may be issued for premises located within *a city of the fourth class* in which the majority of votes cast in the most recent election held pursuant to KRS 242.127 and 242.-129 were in favor of the proposition voted upon *provided the city has an ade-*

---

1. Plaintiffs' complaint appears to assert that the plaintiffs were denied a new license by the Alcoholic Beverage Control Board. In pleadings filed after the original Opinion and Order was entered, however, it is alleged that only a transfer was sought. Apparently the procedure utilized in Kentucky is to surrender the old license and issue a new one in a different location. Since "[t]he Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor *and how to structure the liquor distribution system,*" *California Liquor Dealers v. Midcal Aluminum,* 445 U.S. 97, 110, 100 S.Ct. 937, 945, 63 L.Ed.2d 233

(1980) (emphasis added), this does not appear to be a material distinction. In *Isaacs v. Lewis,* 678 S.W.2d 386, 387 (Ky.1984), the Supreme Court of Kentucky described the procedure sought to be utilized by these same parties as "in fact, the issuance of a new license."

2. Kentucky allows a "county, city, town, district or precinct" to exercise a "local option" to permit, prohibit or otherwise regulate commerce in liquor. A "dry" county is one in which the sale of liquor is prohibited. Kentucky Constitution § 61; Ky.Rev.Stat. § 242.010, *et seq.*

*quate police force* under KRS 95.710 and KRS 95.740 to 95.787.

(3) Licenses to sell distilled spirits or wine *by the package* may be issued only for premises located within incorporated cities, or elsewhere in counties containing a city of the first, second or third class *if those counties maintain an adequate police force* under KRS 70.540 and KRS 70.150 to 70.170.

(4) Notwithstanding subsection (3), the board may, after a field investigation, issue a license to sell distilled spirits and wine *by the package* at premises not located within any city if:

(a) Substantial aggregations of population would otherwise not have reasonable access to a licensed vendor;

(b) The premises to be licensed under this subsection shall be used exclusively for the sale of distilled spirits and wine by the package and *shall not be used in any manner in connection with a dance hall, roadhouse,* restaurant, store or any other commercial enterprise, except as a drug store in which a registered pharmacist is employed; and

(c) The part of any premises to be licensed under this subsection which is available to the public shall not, except in the case of a drug store, exceed one hundred (100) square feet of floor space *and shall not contain any chairs, benches, stools or similar furniture or fixtures.*[3]

(5) No retail package or drink license for the sale of distilled spirits or wine shall be issued for any premises used as or in connection with the operation of any business in which a substantial part of the commercial transaction consists of selling at retail staple groceries or gasoline and lubricating oil. (Emphasis Added)

Subsection 4 of the statute is the part with which we are most concerned, but the rest of the statute is quoted because it lends great insight into the intent of the legislators.

The plaintiffs desire to establish a package liquor license in a new location in Marion County, Kentucky, in which there is no city of the first, second or third class. (Under Kentucky law, these are not invidious classifications, but divisions of cities according to population brackets. *See* Kentucky Constitution § 156.)

These same plaintiffs or persons associated with them have previously attempted to secure a retail package license through the Kentucky administrative and court systems. *See Simms v. Angel,* 513 S.W.2d 176 (Ky.1974) (Opinion written by Justice Reed, now a Judge of this court), and *Isaacs v. Lewis,* 678 S.W.2d 386 (Ky.1984). However, their efforts have been forestalled by state court decisions which have restrictively interpreted the statute to the effect that "aggregations of population" as used in subsection (4) of the statute do not include the residents of adjacent dry territory. *Simms,* 513 S.W.2d at 178. It is not disputed that plaintiffs desire a license to operate premises on the county border in order to attract customers from adjacent dry counties.

Plaintiffs' argument is that the statute as interpreted by the administrative agencies and courts of Kentucky in effect grants the existing licensees, defendants Big John's Tavern, Inc. and its owners, a monopoly. Plaintiffs offer affidavits showing that Big John's charges prices that are higher than those charged in areas where competition from another licensee exists.

■ As has been stated, the court concludes that this statute is exempt from scrutiny under the antitrust laws by virtue of the fact that it is a proper exercise of the state's "core power" under the Twenty-First Amendment to the Constitution of the United States. The Twenty-First Amendment was the amendment which ended prohibition in this country. As part of the compromise for ending this ill-fated experiment, states were accorded broad-reaching powers to regulate the importation and use of alcoholic beverages.

3. KRS 243.230(4)(c) was repealed, 1984 Ky. Acts ch. 59, § 1, effective July 13, 1984, however this section is quoted herein because it bears upon the intention of the legislature in enacting this statute.

The exact language of the Amendment is as follows:

**Amendment 21**

**Section 1. Repeal of Eighteenth Amendment.**

The eighteenth article of amendment to the Constitution of the United States is hereby repealed.

**Section 2. Intoxicating liquors, shipment into dry territory prohibited.**

The transportation or importation into any State, Territory, or possession of the United States for delivery for use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

**Section 3. Ratification, time limit.**

This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by conventions in the several States, as provided in the Constitution, within seven years from the date of the submission hereof to the States by the Congress.

This is certainly not the first case in which the powers of a state under this Amendment have conflicted with the laws of Congress enacted pursuant to the Commerce Clause to prevent anticompetitive activity. Since the adoption of the Twenty-First Amendment, the law interpreting it has undergone judicial development.

The present state of this evolution is demonstrated by the following succinct restatement of the law by the Supreme Court of the United States:

"It is by now clear that the Amendment did not entirely remove state regulation of alcoholic beverages from the ambit of the Commerce Clause. For example, in *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 331–332, 84 S.Ct. 1293, 1297–1298, 12 L.Ed.2d 350 (1964), the Court stated:

'To draw a conclusion ... that the Twenty-first Amendment has somehow operated to "repeal" the Commerce Clause wherever regulation of intoxicating liquors is concerned would, however, be an absurd over-simplification.'

"We also there observed that '[b]oth the Twenty-first Amendment and the Commerce Clause are part of the same Constitution [and] each must be considered in light of the other and in context of the issues and interests at stake in any concrete case.' *Id.*, at 332, 84 S.Ct., at 1298. Similarly, in [*California Retail Liquor Dealers Assn.* v.] *Midcal Aluminum, supra*, 445 U.S., [97] at 109, 100 S.Ct., [937] at 945, [63 L.Ed.2d 233] the Court, noting that recent Twenty-first Amendment cases have emphasized federal interests to a greater degree than had earlier cases, described the mode of analysis to be employed as a 'pragmatic effort to harmonize state and federal powers.' The question in this case is thus whether the principles underlying the Twenty-first Amendment are sufficiently implicated by the exemption for okolehao and pineapple wine to outweigh the Commerce Clause principles that would otherwise be offended. Or as we recently asked in a slightly different way, '*whether the interests implicated by a state regulation are so clearly related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies.*' *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 693, 104 S.Ct. 2694, 2697, 81 L.Ed.2d 580 (1984)." (Emphasis Added)

*Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 3058, 82 L.Ed.2d 200 (1984).

In *Capital Cities Cable, Inc. v. Crisp, supra*, the Court stated:

"... we have held that when a State has not attempted directly *to regulate the sale or use* of liquor within its border— *the core § 2 power*—a conflicting exercise of federal authority may prevail." (Emphasis Added)

104 S.Ct. at 2708.

More recently, in *Brown-Forman Distillers v. N.Y. State Liquor Authority*, —— U.S. ——, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986), the Supreme Court put the matter this way:

"It is well settled that the Twenty-first Amendment did not entirely remove state regulation of alcohol from the reach of

the Commerce Clause. See *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). Rather, the Twenty-first Amendment and the Commerce Clause 'each must be considered in light of the other and in the context of the issues and interests at stake in any concrete case.' *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 332, 84 S.Ct. 1293, 1298, 12 L.Ed.2d 350 (1964). Our task, then, is to reconcile the interests protected by the two constitutional provisions."

106 S.Ct. at 2087.[4]

Therefore, the court is mandated to undertake a balancing of the "issues and interests at stake" between the antitrust laws and the power of the state under the Twenty-First Amendment. We turn then to the statute. Reading the entire text of the statute, including the sections not directly involved here, it is apparent that the statute is intended as an exercise of the Commonwealth's police power to control the distribution and use of intoxicating beverages. It is obvious upon careful consideration that the purpose of the statute is to prevent package stores from being surreptitiously used as taverns or roadhouses.[5] Thus, the entire statute is drafted with the idea of limiting the number of package licenses in areas of the state where there are not adequate police forces to prevent this.

Under section (1), licenses to sell liquor *by the drink* are limited to cities of the first, second or third class, where the existence of an adequate police force is apparently presumed, or to unincorporated areas in counties containing such a city where the existence of adequate policing may be demonstrated.

Section (2) makes the issuance of licenses for sales *by the drink* in cities of the fourth class subject to a local option election, if the fourth class city maintains an adequate police force. Subsection (3) provides for *package licenses* in any city or in the unincorporated area of a county containing a city of the first, second or third class if the county maintains an adequate police force.

Plaintiffs attempt to contend that subsection (4) does not contemplate an analysis of adequate policing as a condition of issuing a package license. However, the reference to a field investigation as a condition to issuing a license in such a county, if substantial aggregations of population would otherwise not have reasonable access to a licensed vendor, implies that the board would take the matter of policing into consideration in making its determination.[6] It is to be noted that subsection (4)(b) shows the concern of the legislators with the possibility of premises being used as a nightclub or roadhouse by patrons consuming the contents of the package on the premises. Subsection 4(c) (now repealed) continued this theme by placing severe restrictions on floor space and prohibiting all furniture in public areas. The drafters' theory apparently was: the fewer the establishments, the less difficulty in policing them.

The court, therefore, is led to the ineluctable conclusion that this statute is a police matter that implicates the Commonwealth's "core area" powers to regulate intoxicating beverages, guaranteed and reserved to it by the Twenty-First Amendment.

The cases cited by the parties fall into two categories. In the first, states have attempted to regulate prices charged. In some instances, states have attempted to mandate resale price maintenance in violation of the antitrust laws. See *324 Liquor Corp. v. Duffy,* — U.S. ——, 107 S.Ct.

---

**4.** *See also, Stein Distributing Company, Inc. v. Department of the Treasury Bureau of Alcohol, Tobacco & Firearms,* 779 F.2d 1407 (9th Cir. 1986); *Miller v. Hedlund,* 803 F.2d 1007 (9th Cir.1986). Subsequent to the issuance of the original opinion, the Supreme Court of the United States decided *324 Liquor Corp. v. Duffy,* —— U.S. ——, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987). This is a pricing decision which does not affect the analysis in this opinion.

**5.** To many Kentuckians, even a well run tavern or "roadhouse" is an iniquitous enterprise.

**6.** *See Moberly v. Berry,* 405 S.W.2d 198 (Ky. 1966), and *Dink v. Palmer-Ball,* 479 S.W.2d 897 (Ky.1972), illustrating consideration of policing factors.

720, 93 L.Ed.2d 667 (1987); *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, *supra; California Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951); *Miller v. Hedlund, supra.* In these pricing cases, the courts have been inclined to hold that the federal interests predominate, noting that the pricing regulations do not involve "core power" under the Twenty-First Amendment.

In other cases concerned with regulation, the powers of the state have been upheld. *Cf. Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939). Recently, the Supreme Court has even upheld state regulations under the Twenty-First Amendment that would otherwise be questionable under the First Amendment. *City of Newport, Ky. v. Iacobucci,* — U.S. —, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986); *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981); *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).

In *City of Newport, Ky. v. Iacobucci, supra,* the Supreme Court, affirming this court, upheld a city ordinance prohibiting nude dancing in establishments licensed to sell liquor for consumption on the premises. Although other decisions cited by the Court found that such dancing in places not serving liquor required First Amendment analysis before it could be prohibited, the Court held that the powers of the state under the Twenty-First Amendment superseded any value the dancing as expression might have under the First Amendment. *Bellanca* and *LaRue, supra,* are to the same effect.

The court reads these decisions as an indication of the policy of the Supreme Court to accord a strong presumption of validity to any state regulation based on the policy of policing the sale or consumption of liquor and regulating the abuses attendant thereto.

Therefore, the court holds that the Commonwealth was within its powers under the Twenty-First Amendment to attempt to regulate the use of package stores as roadhouses by limiting the number and location of licenses in rural areas to facilitate the ease of policing. The drafters of the statute had no intention to accord monopolistic powers or anticompetitive leverage to a licensee obtaining the first license in a particular area of a county. Any such effects are purely fortuitous.

▌ Further, while not finding it necessary to undertake a detailed antitrust analysis, the court would observe that no truly effective monopoly was conferred on any licensee, since persons desiring to obtain liquor could easily obtain it by driving into a city or to the next establishment. The court further holds that the state, through its highest court, was well within its Twenty-First Amendment powers in declining to consider the needs of the residents of dry counties in interpreting this statute. The fact that residents of dry counties may have to purchase liquor at anticompetitive prices does not overcome the regulatory interests of the Commonwealth under the Twenty-First Amendment.

▌ The defendants' motion to dismiss is directed only toward Counts I and II of the Complaint. Count III alleges a deprivation of civil rights due to a violation of plaintiffs' rights to due process and equal protection. Count IV alleges pendent state claims. Since the court holds that the regulation here in question is a valid exercise of the Commonwealth's Twenty-first Amendment power, Count III retains no independent viability and must be dismissed. The above analysis demonstrates that there exists a rational basis for the statute, namely, the need to regulate establishments serving alcoholic beverages. Therefore, plaintiffs' substantive due process and equal protection attacks fail. *Cf. Stratford v. State-House, Inc.*, 542 F.Supp. 1008 (E.D.Ky.1982), *aff'd.* 722 F.2d 742 (6th Cir.1983) (unpublished). With no remaining federal counts, there is nothing to which to append Count IV, hence this count will also be dismissed in the exercise of the court's discretion, since the issues of state constitutional law raised therein are better

decided by the Kentucky courts. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Therefore, the motion to dismiss of the defendants must be granted, and the motion for summary judgment of the plaintiffs denied.

A new separate Judgment accordingly is entered concurrently herewith.