TECO MECHANICAL CONTRACTOR, INC., Appellant,

v.

COMMONWEALTH of Kentucky, Environmental and Public Protection Cabinet, et al., Appellees.

No. 2009–SC–000821–DG.

Supreme Court of Kentucky.

March 22, 2012.

As Corrected June 27, 2012.

Gerry L. Calvert, David J. Guarnieri, Woodson C. Hopkins, McBrayer, McGinnis, Leslie & Kirkland, PLLC, Lexington, KY, Counsel for Appellant.

Mark Francis Bizzell, Office of General Counsel, Frankfort, KY, Irwin H. Cutler, Jr., Everett Clay Hoffman, Priddy, Cutler, Miller & Meade, PLLC, David A. Velander, Louisville, KY, Counsel for Appellees.

Opinion of the Court by Justice SCOTT.

This case presents two constitutional questions related to Kentucky's prevailing wage law. The first question raised is whether the law violates procedural due process by failing to afford contractors a hearing before the Labor Cabinet assesses back wages and civil penalties and demands their payment. The second question is whether the law improperly delegates legislative or judicial authority to the Labor Cabinet by failing to define the categories of workers to which it applies.

The Franklin Circuit Court found that the law does not violate due process or improperly delegate legislative or judicial authority. The Court of Appeals affirmed. We granted discretionary review and, because the prevailing wage law does not violate the Constitutions of either this Commonwealth or the United States, we affirm.

## I. BACKGROUND

Appellant, TECO Mechanical Contractor, Inc., contends that portions of Kentucky's prevailing wage law[1] are unconstitutional. Before addressing the specific factual circumstances giving rise to TECO's claims, it is necessary to have a basic understanding of the purpose and requirements of Kentucky's prevailing wage law.

### A. Prevailing Wage Law

■ Prevailing wage laws require contractors constructing government projects to pay their employees a wage equal to or greater than that which is typically paid to similar workers in the locality where the project is being built. 64 Am.Jur.2d Public Works and Contracts § 213. By requiring government contractors to pay their employees the locality's prevailing wage, these laws protect community wage standards and ensure that local contractors and laborers have an opportunity to compete for publicly funded projects. *Universities Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 773–74, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981). They also prevent government contractors from "exploiting the labor which they employ." *Cassady v. Board of Aldermen of City of Bowling Green,* 277 S.W.2d 1, 2 (Ky.1955).

Prevailing wage laws have been enacted by the federal government[2] and in the

---

1. KRS 337.505–550.

2. The federal prevailing wage law is known as the Davis–Bacon Act. *See* 40 U.S.C. §§ 3141 *et seq.*

majority of states, including Kentucky. Ginny Wilson et al., *An Analysis of Kentucky's Prevailing Wage Laws and Procedures*, 3–4 (Dec. 13, 2001), *available at* http://www.lrc.ky.gov/lrcpubs/RR304.pdf. In the Commonwealth, the General Assembly has charged the Labor Cabinet (the Cabinet) with the duties of establishing prevailing wage rates and enforcing the prevailing wage law. *See* KRS 337.520(1); KRS 337.550.

## 1. Establishing Prevailing Wages

For every locality in the Commonwealth, the Cabinet must set the prevailing wage rate for each classification of construction workers—from bricklayers to electricians to plumbers.[3] KRS 337.520(1). The prevailing wage for each type of construction worker in a locality includes two components: (1) the basic hourly rate paid to that type of worker; and (2) an hourly figure based on the fringe benefits—such as medical care, life insurance, and retirement benefits—provided by local employers to that type of worker. KRS 337.505. In setting the prevailing wage rates for each locality, the Cabinet must consider the wage rates paid on previous public works projects in the locality, the wage rates paid on comparable, private projects in the locality, and collective bargaining agreements relating to the locality. KRS 337.520(3).

Whenever a government entity, known as a public authority,[4] wishes to construct a public works [5] project, it must contact the Cabinet and obtain the prevailing wage rates for each type of worker needed to complete the job. KRS 337.510(1). After the Cabinet provides it with a prevailing wage schedule, the public authority must incorporate the schedule into its bid documents and project specifications so that contractors bidding on the project are aware of the wage rates and may properly estimate their labor costs. *See* KRS 337.510(1). Once the contract is awarded, the prevailing wage schedule must also be incorporated into the construction contract itself. KRS 337.510(1). Additionally, the contract is required to contain a stipulation that the contractor and all of its subcontractors will pay no less than the prevailing wage. KRS 337.530(1).

## 2. Enforcement of the Prevailing Wage Law

In addition to setting prevailing wages rates, the Cabinet is also responsible for enforcing the prevailing wage law by ensuring that government contractors properly pay their workers. KRS 337.550. To this end, contractors and subcontractors

3. The Cabinet's prevailing wage rates are available for informational purposes on its website. *See* Kentucky Labor Cabinet: Current Wage Rates by Locality, http://labor.ky.gov/dows/doesam/pw/Pages/Current-Wage-Rates-by-Locality.aspx. However, these figures are not official.

4. KRS 337.010(3)(d) defines a "public authority" as:

[A]ny officer, board, or commission of this state, or any political subdivision or department thereof in the state, or any institution supported in whole or in part by public funds, including publicly owned or controlled corporations, authorized by law to enter into any contract for the construction of public works and any nonprofit corpora-

tion funded to act as an agency and instrumentality of the government agency in connection with the construction of public works, and any "private provider", [sic] as defined in KRS 197.500, which enters into any contract for the construction of an "adult correctional facility", [sic] as defined in KRS 197.500.

5. KRS 337.010(3)(e) defines "public works" as "all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, waterworks, and all other structures or work, including 'adult correctional facilities', [sic] as defined in KRS 197.500, constructed under contract with any public authority."

working on prevailing wage projects are required to keep records indicating the hours worked by every employee in each classification of construction and the wages paid for that labor. KRS 337.530(2). For example, if an employee performs both pipefitting work and sheet metal work, his employer must maintain records noting the number of hours worked as a pipefitter and as a sheet metal worker and the wages paid for each type of work. These records must be made available for the Cabinet's inspection at any reasonable time. *Id.*

If an employee performing work on a prevailing wage job believes that he has not been properly paid, he may file a complaint with the Cabinet. KRS 337.550(1). The Cabinet must investigate the worker's claims and, if appropriate, bring a legal action to assist him in collecting the back wages allegedly due from his employer. KRS 337.550. If the worker is employed by a subcontractor, the Cabinet may take action against either the subcontractor or the prime contractor, which is jointly and severally liable for any wages the subcontractor fails to pay. KRS 337.990(12).

The Cabinet also has the power to penalize contractors and subcontractors that violate the prevailing wage law. KRS 337.990. The Cabinet may do so by issuing a citation describing the violations that occurred and imposing a civil penalty. KRS 336.985(3). The civil penalties assessed by the Cabinet can range from one hundred to one thousand dollars for each violation. KRS 337.990(12). If the contractor fails to pay the penalties within fifteen days of receiving the citation, the Cabinet must file a civil action to collect them. KRS 336.985(3).

With this statutory framework in mind, we turn to the facts giving rise to TECO's claims.

## B. Relevant Facts and Procedural History

TECO is a mechanical contractor that provided contractor and subcontractor services on a number of public works projects. Under the contracts for these projects, TECO was required to pay its employees the prevailing wage. In 2001, several TECO employees contacted the Cabinet and alleged that TECO had failed to pay them the prevailing wages for the work they performed. Specifically, the employees asserted that TECO paid them according to a formula under which it classified them as lower paid general laborers for a fixed number of hours and as higher paid skilled laborers for a fixed number of hours, regardless of the actual time spent working in each classification.

The Cabinet investigated the employees' claims and, in November 2002, after auditing TECO's wage records from the projects in question, issued ten notices of violation to TECO and demanded that it pay back wages of $150,781.82 to its employees. TECO disputed the Cabinet's determination and, following further investigation, the Cabinet reduced the amount of back wages owed to $77,571.69. Subsequently, two of the employees withdrew their claims against TECO and the Cabinet further reduced its calculation of back wages to $63,494.21.

After approximately two years of investigation and negotiation, the Cabinet notified TECO with its final settlement offer for the alleged violations of the prevailing wage law—$47,620.65 in back wages and $4,000.00 in civil penalties. The Cabinet informed TECO that it would seek to recover from the prime contractors if it did not agree to pay this amount. TECO declined the settlement offer and, as a result, the Cabinet notified the prime contractors and demanded that they pay the back wages allegedly owed by TECO.

Three of the prime contractors notified by the Cabinet sent letters to TECO expressing their displeasure at the prospect of paying TECO's employees' back wages. All three prime contractors informed TECO that their business relationship would be seriously damaged if they were required to pay for TECO's alleged violations of the prevailing wage law.

Subsequently, TECO filed a Complaint and Petition for Declaration of Rights against the Cabinet in Franklin Circuit Court. TECO asserted that the prevailing wage law violates due process by authorizing the Cabinet to assess back wages and civil penalties without a hearing. TECO also argued that the prevailing wage law fails to specify how workers should be classified and, as a result, improperly delegates legislative or judicial authority to the Cabinet. The Cabinet responded by asserting counterclaims against TECO and filing cross-claims against the prime contractors.[6]

TECO moved for summary judgment on both of its constitutional claims. The circuit court denied TECO's motion, finding that the law neither violated due process nor improperly delegated legislative or judicial authority to the Cabinet. With regard to the due process issue, the circuit court reasoned that TECO's ability to seek judicial review of the Cabinet's actions provided adequate due process. The circuit court also found that the prevailing wage law does not unconstitutionally delegate legislative or judicial authority because it would be "impractical if not impossible" for the General Assembly to define every category of construction work covered by the prevailing wage law.[7]

TECO appealed the circuit court's adverse rulings on its constitutional claims and the Court of Appeals affirmed.[8] TECO then requested that this Court consider its constitutional claims and we granted discretionary review.[9]

## II. ANALYSIS

■ TECO asserts that Kentucky's prevailing wage law violates the Constitutions of this Commonwealth and the United States by (1) failing to afford contractors a due process hearing before the Cabinet assesses and attempts to collect back wages and civil penalties; and (2) by failing to provide the Cabinet with appropriate guidance by defining each classification of construction workers covered by the law. This Court adheres to the "long-established principle that a strong presumption exists in favor of [a] statute's constitutionality." *Stephens v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 624, 626

6.  The Kentucky State Building and Construction Trades Council, AFL–CIO, the Associated General Contractors of Kentucky, Inc., the Associated Builders and Contractors of Kentuckiana, Inc., and the Mechanical Contractors Association of Kentucky, Inc. were permitted to intervene in the circuit court action.

7.  Following its ruling on TECO's motion for summary judgment, the circuit court conducted a bench trial on the Cabinet's counterclaims. Based on the evidence presented, the court entered a judgment against TECO for $64,163.47 in back wages and $9,000.00 in civil penalties.

8.  TECO also appealed the circuit court's adverse rulings on the Cabinet's counterclaims. With regard to those issues, the appellate court found that the circuit court applied the incorrect standard of review and improperly admitted hearsay evidence at trial. As a result, the appellate court vacated the circuit court's judgment and remanded for appropriate findings using the proper standard of review and omitting the hearsay evidence.

9.  Neither TECO nor the Cabinet sought discretionary review of the Court of Appeals' ruling regarding the Cabinet's counterclaims. Therefore, those issues are not before this Court.

(Ky.1995) (citations omitted). "The [party] who questions the validity of an act bears the burden to sustain such contention." *Id.* With this standard in mind, we will address each of TECO's constitutional claims.

## A. Due Process

TECO first argues that Kentucky's prevailing wage law violates procedural due process. TECO contends that the law is unconstitutional because it permits the Cabinet to assess back wages and civil penalties and demand payment from subcontractors and prime contractors without a hearing. We disagree.

■ Both the United States and Kentucky Constitutions prohibit the Commonwealth from depriving individuals of liberty or property without due process of law.[10] *Romero v. Administrative Office of Courts,* 157 S.W.3d 638, 640 (Ky.2005). Procedural due process requires that some kind of hearing be conducted before the State finally deprives a person of his liberty or property. *Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). The requirements of procedural due process are not intended to prevent the State from depriving individuals of their liberty or property; instead, they are intended to " 'minimize substantively unfair or mistaken deprivations of' life, liberty, or property by enabling per-

sons to contest the basis upon which a State proposes to deprive them of protected interests." *Carey v. Piphus,* 435 U.S. 247, 259–60, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (*quoting Fuentes v. Shevin,* 407 U.S. 67, 81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).

■ Where a law is challenged on procedural due process grounds, a two-part analysis applies. *Ingraham v. Wright,* 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). We must first determine whether the interest being deprived is a protected liberty or property interest. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). If the interest in question is a protected one, we must next determine whether the procedures provided for its deprivation satisfy due process. *Id.*

### 1. Protected Interest

TECO raises two arguments in support of its contention that it was deprived of a protected interest. First, TECO asserts that it was deprived of property when the Cabinet imposed back wages and civil penalties and demanded that TECO pay these amounts. Second, TECO contends it was deprived of liberty when the Cabinet demanded payment of the back wages from the prime contractors.[11]

■■ "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Four-

**10.** The Fourteen Amendment to the U.S. Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."

Section 2 of the Kentucky Constitution provides that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

**11.** Neither the Court of Appeals nor the circuit court directly addressed the question of

whether TECO has been deprived of a protected interest. However, we are compelled to resolve this question because it is essential to due process analysis. The protections of due process do not apply unless a protected interest is at stake. Furthermore, if a protected interest is at stake, we must consider the character of the interest in order to determine what procedures are necessary to prevent an unjust deprivation.

teenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "[T]he property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Id.* at 571–52, 92 S.Ct. 2701 (footnote omitted). Additionally, the liberty interests protected by due process include far more than "the sort of formal constraints imposed by the criminal process." *Id.* at 572, 92 S.Ct. 2701 (footnote omitted). *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (finding a protected interest in welfare benefits); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (finding a protected interest in attending public school); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (finding a protected interest in continued government employment).

■ Although the concepts of property and liberty are broad, procedural due process does not guarantee individuals the right to a hearing for every government deprivation. *See Roth,* 408 U.S. at 570, 92 S.Ct. 2701. "[T]he range of interests protected by procedural due process is not infinite." *Id.*

### a. Cabinet's Demand for Payment from TECO

■ TECO first argues that it was deprived of a protected interest when the Cabinet demanded that it pay back wages and civil penalties. Specifically, TECO asserts that the Cabinet's demands for payment deprived it of a protected property interest in the form of money. We disagree.

TECO clearly has a protected property interest in its business assets, including the money in its accounts. However, we cannot find that the Cabinet's demands for payment of back wages and civil penalties actually deprived TECO of money. Despite its claim of financial deprivation, TECO cites no specific monetary losses resulting from the Cabinet's actions. To the contrary, TECO admits that it has not paid *any* amount towards the back wages and civil penalties assessed by the Cabinet. Additionally, TECO concedes that the Cabinet has not attached, garnished, or otherwise seized any of TECO's property or assets to secure its claims. Simply put, TECO lost no money or assets due to the Cabinet's demands that it pay back wages and civil penalties.[12]

This lack of deprivation results directly from the procedural safeguards written into the prevailing wage law. In the event that a contractor disputes the Cabinet's claims for back wages or civil penalties,

---

12. There is some indication in the record that one of the prime contractors withheld payment from TECO as a result of the Cabinet's investigation. However, TECO did not raise this issue in asserting that it had been deprived of a property interest. Furthermore, even if it had, the U.S. Supreme Court considered factually identical circumstances in *Lujan v. G & G Fire Sprinklers, Inc.* and rejected the subcontractor's procedural due process claim. 532 U.S. 189, 121 S.Ct. 1446, 149 L.Ed.2d 391 (2001). In *Lujan,* the U.S. Supreme Court considered a subcontractor's claim under California's prevailing wage law and held that the statutory scheme permitting the prime contractor to withhold funds for the subcontractor's alleged violations did not contravene procedural due process because the subcontractor had an opportunity to pursue its claim in state court. *Id.* at 193, 195, 121 S.Ct. 1446. The Supreme Court held that post-deprivation access to the judicial process was sufficient where the property interest at stake was the subcontractor's claim for payment under its contract with the prime contractor. *Id.* at 197–98, 121 S.Ct. 1446. Because TECO received a post-deprivation judicial hearing, had it raised this claim, it would have failed under *Lujan.*

the Cabinet has no independent authority to collect any amount from the contractor. Instead, the Cabinet must file a civil suit to enforce its claims. Specifically, KRS 337.550 and KRS 336.985(3) require the Cabinet must bring a civil action to collect back wages and civil penalties, respectively. Thus, so long as the Cabinet follows the procedures set forth in the statutes, it cannot deprive a contractor of property without court intervention. Such was the case here.

Under these factual circumstances, we cannot find that the Cabinet's requests for payment deprived TECO of money or any other business assets. Accordingly, we cannot find that the Cabinet's actions deprived it of a protected property interest.

### b. Cabinet's Demand for Payment from Prime Contractors

■ TECO also argues that the Cabinet deprived it of a protected liberty interest when it requested that the prime contractors pay the back wages allegedly owed by TECO. Specifically, TECO argues that, by notifying the prime contractors that it had violated the prevailing wage law, the Cabinet harmed TECO's reputation and ability to conduct future business with the prime contractors. TECO maintains that these interests, taken together, constitute a protected interest for purposes of procedural due process. We disagree.

■ Government injury to an individual's reputation, standing alone, is not a deprivation of liberty to which the protections of procedural due process apply. *Paul v. Davis,* 424 U.S. 693, 706, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In order to implicate the Due Process Clause, an individual must be deprived of his reputation and some other right or status previously recognized under the law. *Id.* at 712, 96 S.Ct. 1155. For example, in *Wisconsin v.*

*Constantineau,* the Supreme Court held that an individual was entitled to due process when the state labeled her as an excessive drinker *and* prohibited her from purchasing alcohol. 400 U.S. 433, 435–36, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). However, in *Paul,* the Supreme Court held that an individual was not entitled to due process where the government labeled him as an "active shoplifter." 424 U.S. at 697, 712, 96 S.Ct. 1155. Although the government's action harmed the individual's reputation, the Supreme Court found that he had not been deprived of a protected interest because the government took no other action which altered the individual's legal status. *Id.* at 712, 96 S.Ct. 1155.

The two-part requirement enunciated in *Paul* of harm to reputation plus harm to some other tangible interest has been described as the "stigma plus test." *See Siegert v. Gilley,* 500 U.S. 226, 234, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (using the term to describe the Petitioner's argument). The purpose of the stigma plus test is to ensure that the due process clause does not become "a font of tort law to be superimposed upon whatever systems may already be administered by the State." *Paul,* 424 U.S. at 701, 96 S.Ct. 1155. It prevents the "conver[sion of] every defamation by a public official into a deprivation of liberty." *Id.* at 702, 96 S.Ct. 1155.

Since its ruling in *Paul,* the Supreme Court has narrowed the types of deprivations which are sufficient to meet the "plus" element of the stigma plus test. *Id.* at 234, 111 S.Ct. 1789. Specifically, the Court held that the individual must suffer harm to reputation and an additional injury which is not merely a consequence of the harm to reputation. *Id.* In *Siegert,* the plaintiff's former government supervisor sent his new government employer a negative letter of reference. *Id.* at 228, 111

S.Ct. 1789. As a result of the former supervisor's statements, the plaintiff lost his job and was unable to obtain comparable employment. *Id.* at 228–29, 111 S.Ct. 1789. Subsequently, the plaintiff sued his former supervisor for violating his right to due process, alleging that the supervisor's actions met the stigma plus test because the supervisor harmed his reputation and his ability to obtain future employment. *Id.* at 229, 111 S.Ct. 1789.

On review, the U.S. Supreme Court held that the impairment of the plaintiff's future employment prospects was insufficient to meet the "plus" element of the stigma plus test. *Id.* at 234, 111 S.Ct. 1789. The Court reasoned that this type of harm was merely an element of the damages resulting from the government's defamation:

> Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens*[13] action.

*Id.* Because the plaintiff failed to demonstrate a loss that was not simply a consequence of the government's disparaging statement, he failed to establish that he had been deprived of a protected interest under the stigma plus test. *Id.* As a result, the Court rejected his due process claim. *Id.*

Applying the above-cited legal principles to the instant case, we cannot find that TECO has alleged sufficient injury to meet the "plus" element of the stigma plus test. TECO contends that by informing the prime contractors that it had violated the prevailing wage law, the Cabinet harmed its reputation and impaired its ability to conduct future business with the prime contractors. We agree that the Cabinet's statements to the prime contractors likely harmed TECO's reputation as a competent, law-abiding contractor. However, the additional harm alleged by TECO, the impairment of its future business opportunities, is nearly identical to the harm found to be insufficient in *Siegert.*

As in *Siegert,* the additional harm cited by TECO is simply a consequence of the government's negative statements. The Cabinet impaired TECO's ability to conduct business with the prime contractors by impugning TECO's reputation. The Cabinet took no other action to alter TECO's legal status or inhibit it from conducting future business with the prime contractors. Thus, the additional damage claimed by TECO flowed directly from the injury to its reputation. Under *Siegert,* such damage is insufficient to establish the "plus" element of the stigma plus test. Because TECO cannot meet the stigma plus test, we find that it was not deprived of a liberty interest when the Cabinet sought payment from the prime contractors.

TECO failed to establish that the Cabinet's actions under the prevailing wage law deprived it of a property or liberty interest that is protected by the Due Process Clause.[14] As a result, we affirm the Court of Appeals and hold that the prevailing

---

**13.** A *Bivens* action is a lawsuit for damages against a federal official for violation of an individual's constitutional rights. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**14.** Because TECO failed to establish that it was deprived of a protected property or liberty interest, we need not address the second element of the two-part analysis for procedural due process challenges—whether the procedures employed satisfied due process.

wage law does not violate procedural due process.

## B. Nondelegation Doctrine

TECO next asserts that the prevailing wage law violates the Constitution of this Commonwealth by improperly delegating legislative or judicial authority to the Cabinet. Specifically, TECO contends that the prevailing wage law fails to provide the Cabinet with any guidance in defining the classification of construction workers to which the law applies. As a result, TECO asserts that the law impermissibly allows the Cabinet to exercise legislative authority by setting its own definitions of worker classifications and judicial authority by adjudicating whether contractors paid their workers in accordance with these classifications.[15] We disagree.

In the Commonwealth, Sections 27 and 28 of the Kentucky Constitution prohibit one branch of government from exercising the powers assigned to another.[16] The nondelegation doctrine recognizes that the Constitution vests the powers of government in three separate branches and, under the doctrine of separation of powers, each branch must exercise its own power rather than delegating it to another

branch. *Board of Trustees of Judicial Form Retirement System v. Attorney General of Commonwealth,* 132 S.W.3d 770, 781 (Ky.2003).

Although "Kentucky is a strict adherent to the separation of powers doctrine," *Diemer v. Commonwealth, Transp. Cabinet, Dept. of Highways,* 786 S.W.2d 861, 864 (Ky.1990), "given the realities of modern rule-making, [the General Assembly] has neither the time nor the expertise to do it all; it must have help." *Board of Trustees,* 132 S.W.3d at 781 (citing *Mistretta v. United States,* 488 U.S. 361, 372, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)). *See also Holsclaw v. Stephens,* 507 S.W.2d 462, 471 (Ky.1973) (noting that the General Assembly is "not in continuous session and of necessity [it] cannot undertake to determine all facts incident to the administration of the laws which [it] enact[s]"). As a result of this reality, we have acknowledged that administrative agencies, such as the Cabinet, may exercise legislative or judicial authority if certain protections are in place.

The General Assembly may validly vest legislative or judicial authority in an administrative agency if the law del-

---

**15.** On appeal to this Court, TECO also argues that the Cabinet acted beyond the scope of the powers delegated to it when it classified the various types of construction workers covered by the prevailing wage law. However, TECO failed to raise this argument in the trial court or the Court of Appeals. An appellant is not "permitted to feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth,* 544 S.W.2d 219, 222 (Ky.1976), *overruled on other grounds by Wilburn v. Commonwealth,* 312 S.W.3d 321 (Ky.2010). Because TECO failed to raise this argument in the trial court, we are without the authority to address it. *See Ten Broeck Dupont, Inc. v. Brooks,* 283 S.W.3d 705, 734 (Ky.2009) ("An appellate court 'is without authority to review issues not raised in or decided by the trial court.' ")

(quoting *Regional Jail Authority v. Tackett,* 770 S.W.2d 225, 228 (Ky.1989)).

**16.** Section 27 of the Kentucky Constitution provides:

The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

Section 28 of the Kentucky Constitution provides that, "[n]o person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted."

egating that authority provides "safeguards, procedural and otherwise, which prevent an abuse of discretion by the agency." *Kentucky Commission on Human Rights v. Fraser*, 625 S.W.2d 852, 854 (Ky.1981) (citing *Butler v. United Cerebral Palsy of Northern Ky., Inc.*, 352 S.W.2d 203, 208 (Ky.1961)). Factors to consider in determining whether the law in question provides sufficient safeguards include the experience of the agency to which the authority is delegated, the subject matter of the law, and the availability of judicial review. *Butler*, 352 S.W.2d at 208. With regard to delegations of legislative authority, we also consider whether the law prescribes sufficient standards to prevent the agency from exercising unfettered discretion. *Holsclaw*, 507 S.W.2d at 471. When considering a delegation of judicial authority, we also examine whether "the statute adequately defines the prohibited conduct" so that the agency "may ascertain the facts and administer the law." *Fraser*, 625 S.W.2d at 855.

Turning to the facts of this case, considering the factors enumerated in *Butler*, we hold that there are sufficient safeguards to prevent the Cabinet from abusing any legislative or judicial authority granted to it under the prevailing wage law. The Cabinet is a long-established agency with over sixty years of experience enforcing hour and wage standards. Additionally, given the detailed subject matter of the prevailing wage law—minimum wages for numerous classifications of construction workers in every locality in the Commonwealth—some delegation of authority is clearly necessary. Finally, the prevailing wage law provides for judicial review of the Cabinet's actions. As discussed above, the Cabinet cannot collect back wages and civil penalties without filing suit against the violating contractor. KRS 337.550; KRS 336.985(3). Furthermore, if a contractor disagrees with the Cabinet's prevailing wage determinations, it may seek judicial review of the Cabinet's findings. KRS 337.525(1). These protections provide adequate safeguards against an abuse of discretion by the Cabinet.

■ Next, we hold that TECO's argument that the statute improperly delegates legislative authority to the Cabinet is without merit. TECO contends that the statute is invalid because it vests the Cabinet with the discretion to define the categories of construction workers covered by the act in any way it sees fit. For example, TECO suggests that the statute would permit the Cabinet to define a "sheet metal worker" as a worker "whose duty was to pick up all the empty aluminum soda pop cans on the job site." However, a review of KRS 337.505 reveals that the Cabinet's discretion in classifying construction workers is not so broad. KRS 337.505(1) requires the Cabinet to set the prevailing wage for each classification of construction workers based on the wages paid to "the majority of laborers, workmen, and mechanics employed in each classification of construction upon reasonably comparable construction in the locality where the work is to be performed." Therefore, in establishing classifications of construction workers (and setting their prevailing wages), the Cabinet must conform to local standards. We believe that this guidance is sufficient to prevent the Cabinet from exercising unfettered discretion and requiring a can collector to be classified as a "sheet metal worker."

■ Finally, we also hold that TECO's argument that the prevailing wage law improperly delegates judicial authority to the Cabinet lacks merit. TECO contends that the law allows the Cabinet to arbitrarily exercise judicial authority by issuing citations, calculating back wages, and imposing civil penalties. However, we

agree with the Court of Appeals that these actions are administrative, not judicial. The Cabinet does not engage in agency adjudication—it does not conduct hearings or issue rulings which have the force of law. Instead, the prevailing wage law requires the Cabinet to file suit so that the circuit court may adjudicate its claims and issue an enforceable judgment. Because the Cabinet's actions are not judicial in nature, we cannot find that the prevailing wage law improperly delegates judicial authority.

### III. CONCLUSION

For the reasons set forth above, we hold that the prevailing wage law does not violate procedural due process or improperly delegate legislative or judicial authority to the Labor Cabinet. We therefore affirm the judgment of the Court of Appeals.

All sitting. All concur.