RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0015p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
―――――――――――

MAXWELL'S PIC-PAC, INC; FOOD WITH WINE
COALITION, INC.,
   *Plaintiffs-Appellees/Cross-Appellants*,

   *v.*

TONY DEHNER, in his official capacity as
Commissioner of the Kentucky Department
of Alcoholic Beverage Control; DANNY
REED, in his official capacity as the Distilled
Spirits Administrator of the Kentucky
Department of Alcoholic Beverage Control,
   *Defendants-Appellants/Cross-Appellees*,

LIQUOROUTLET, LLC, d/b/a The Party
Source,
   *Intervenor-Appellant/Cross-Appellee*.

Nos. 12-6056/ 6057/ 6182

―――――――――――

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:11-cv-00018;—John G. Heyburn II, District Judge.

Argued: November 19, 2013

Decided and Filed: January 15, 2014

Before: COOK and STRANCH, Circuit Judges; CARR, District Judge.[*]

―――――――――――

## COUNSEL

**ARGUED:** Peter F. Ervin, PUBLIC PROTECTION CABINET, Frankfort, Kentucky, for Appellants-Cross/Appellees Dehner & Reed. Kevin L. Chlarson, MIDDLETON REUTLINGER, Louisville, Kentucky, for Appellant/Cross-Appellee Liquor Outlet. M. Stephen Pitt, WYATT, TARRANT & COMBS, LLP, Louisville, Kentucky, for Appellees-Cross/Appellants. **ON BRIEF:** Peter F. Ervin, La Tasha Buckner, PUBLIC PROTECTION CABINET, Frankfort, Kentucky, for Appellants-Cross/Appellees

―――――――――――

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

Dehner & Reed.   Kevin L. Chlarson, Kenneth S. Handmaker, Loren T. Prizant, MIDDLETON REUTLINGER, Louisville, Kentucky, for Appellant/Cross-Appellee Liquor Outlet.  M. Stephen Pitt, Christopher W. Brooker, J. Brooken Smith, WYATT, TARRANT & COMBS, LLP, Louisville, Kentucky, for Appellees-Cross/Appellants. Anthony S. Kogut, WILLINGHAM & COTÉ, P.C., East Lansing, Michigan, for Amicus Curiae.

————————————

## OPINION

————————————

COOK, Circuit Judge.   A Kentucky statute prohibits businesses that sell substantial amounts of staple groceries or gasoline from applying for a license to sell wine and liquor.  Ky. Rev. Stat. § 243.230(7).  A regulation applies this provision to retailers that sell those items at a rate of at least 10% of gross monthly sales.  804 Ky. Admin. Regs. 4:270.  Harmed by the statute, Maxwell's Pic-Pac (a grocer) and Food With Wine Coalition (a group of grocers) sued administrators of the Kentucky Department of Alcoholic Beverage Control; The Party Source (a liquor store) intervened as a defendant.  The grocers alleged that the statute irrationally discriminates against them in violation of their state and federal equal-protection rights.  They also alleged that the statute violates (1) state separation-of-powers principles by granting the administrative board unfettered discretion to define the law and (2) state and federal due-process rights by vaguely defining its terms.  The district court granted summary judgment to the grocers on the federal equal-protection claim but rejected the others.  All parties appeal.

Because the statute conceivably seeks to reduce access to high-alcohol products, and because the statute offends neither separation of powers nor due process principles, we REVERSE the district court's judgment on the federal equal-protection claim and AFFIRM on the remainder.

I.

In the decades before 1920, the free market for alcohol in the United States begot political corruption, prostitution, gambling, crime, and poverty. (R. 40-19, Erickson Expert Report at 4.)  National manufacturers built saloons near factories to attract workers, saturating neighborhoods with alcohol suppliers.  The manufacturers funded advertising campaigns, fueling high consumption, and bribed politicians away from crackdowns.  The country thus constitutionalized the prohibition of alcohol.  Effective in 1920, the 18th Amendment banned the "manufacture, sale, or transportation of intoxicating liquors" in the United States.  U.S. Const. amend. XVIII.

Prohibition, it turned out, bred a new kind of lawlessness.  (R. 40-19, Erickson Expert Report at 4.)  Though reducing alcohol consumption, Prohibition, poorly enforced, spawned a violent and unruly organized crime industry to satisfy appetites for alcohol.  The country recognized Prohibition as an extreme response to the dangers of alcohol and, with the 21st Amendment, repealed the 18th Amendment in 1933.  U.S. Const. amend. XXI § 1.  The 21st Amendment also expressly granted each state the right to regulate alcohol use within its borders.  *See id*. § 2.

In establishing their regulatory systems, the states relied on a study by Raymond Fosdick and Albert Scott.  (R. 40-19, Erickson Expert Report at 5.)  Fosdick and Scott argued that a regulatory system must limit access to products with high alcohol content, such as liquor.  Raymond B. Fosdick & Albert L. Scott, Toward Liquor Control ix (Center for Alcohol Policy 2011) (1933).  To this end, according to the study, license law should restrict the number and character of places selling liquor.  *Id*. at 30. Analogizing the saloon-on-every-corner problem to the prevalence of gas stations in the modern world, Fosdick and Scott emphasized the danger of selling liquor at gas stations. *Id*. at 29.  "[E]very automobile today is an argument against liquor . . ."  *Id*. at 86.

In line with these principles, Kentucky banned most grocery stores and gas stations from selling wine and liquor.  After the repeal of Prohibition, the General Assembly established a licensing system in 1938 that provided:

> No Retailer Package License or Retail Drink License shall be issued for any premises used as or in connection with the operation of a grocery store or filling station. "Grocery Store" shall be construed to mean any business enterprise in which a substantial part of the commercial transaction consists of selling at retail products commonly classified as staple groceries. "Filling Station" shall be construed to mean any business enterprise in which a substantial part of the commercial transaction consists of selling gasoline and lubricating oil at retail.

1938 Ky. Acts c. 2 art. II § 54(8) (codified as Ky. Stat. § 2554b-154(8) (1939)). This basic distinction between grocery stores/gas stations and other retailers exists today. Currently, the state offers two basic alcohol licenses for retail sales—a generic malt beverage license and a wine-and-liquor license—and caps the number of wine-and-liquor licenses available. (R. 40-19, Erickson Expert Report at 8.) The current statute reads:

> No quota retail package license or quota retail drink license for the sale of distilled spirits [liquor] or wine shall be issued for any premises used as or in connection with the operation of any business in which a substantial part of the commercial transaction consists of selling at retail staple groceries or gasoline and lubricating oil.

Ky. Rev. Stat. § 243.230(7). In 1982, almost 50 years after the original statute, the Alcohol Beverage Control Board promulgated a regulation defining the terms of the statute. *See* Ky. Rev. Stat. § 241.060(1) (granting the board authority to promulgate reasonable administrative regulations). The regulation provides:

> Section 1. For the purpose of enforcing [the statute] "substantial part of the commercial transaction" shall mean ten (10) percent or greater of the gross sales as determined on a monthly basis.
>
> Section 2. For the purpose of enforcing [the statute] staple groceries shall be defined as any food or food product intended for human consumption except alcoholic beverages, tobacco, soft drinks, candy, hot foods and food products prepared for immediate consumption.

804 Ky. Admin. Regs. 4:270. Together, § 243.230(7) and the regulation prevent retailers like Maxwell's Pic-Pac and the grocers comprising Food With Wine Coalition (jointly, "the grocers") from competing for a wine-and-liquor license.

Agreeing on the pertinent facts, each party to this suit moved for summary judgment, which the district court granted to the grocers on their federal equal-protection claim. The court concluded that no rational reason explains "why a grocery-selling drugstore like Walgreens may sell wine and liquor, but a pharmaceutical-selling grocery store like Kroger cannot." The court expressly denied relief on the state separation-of-powers claim, concluding that the statute, neither vague nor overbroad, constitutionally delegates legislative authority to the administrative agency.

## II.

On appeal, Kentucky and The Party Source contend that a rational basis—reducing access to products with high alcohol content—supports distinguishing grocery stores and gas stations from other retailers, and thus the statute complies with the Equal Protection Clause. The grocers face a high burden to convince us otherwise. For this type of legislation, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). We must uphold an economic regulation "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993); *Smith v. Botsford Gen. Hosp.*, 419 F.3d 513, 520 (6th Cir. 2005). Though Kentucky law occasionally subjects economic policies to stricter standards, *see Elk Horn Coal Corp. v. Cheyenne Res.*, 163 S.W.3d 408, 418–19 (Ky. 2005), the grocers contend only that the statute lacks a rational basis.

The state indisputably maintains a legitimate interest in reducing access to products with high alcohol content. According to Fosdick and Scott, "states must use their control systems to steer society to lower alcohol form[s] of products." Fosdick & Scott, *supra*, at ix. Products with high alcohol content exacerbate the problems caused by alcohol, including drunken driving. *See id.* at 86. The state's interest applies not only to the general public; minors, inexperienced and impressionable, require particular vigilance. And the state's interest applies to abstinent citizens who, morally or

practically objecting to alcohol exposure, wish to avoid retailers that sell such drinks. As Kentucky puts it, its legislature "chose to prohibit the sale in those places where all in the community must come together."  (State's Principal Br. at 17.)

We conclude that reasonably conceivable facts support the contention that grocery stores and gas stations pose a greater risk of exposing citizens to alcohol than do other retailers.  A legislature could rationally believe that average citizens spend more time in grocery stores and gas stations than in other establishments; people typically need to buy staple groceries (for sustenance) and gas (for transportation) more often than items from retailers that specialize in other, less-frequently-used products.  Consider the district court's pharmacy example.  Kentucky could believe that its citizenry visits grocery stores and gas stations more often than pharmacies—people can survive without *ever* visiting a pharmacy given that many grocery stores fill prescriptions.  On the other hand, most people who object to confronting wine and liquor conceivably cannot avoid grocery stores and gas stations.  Though some modern pharmacies sell staple groceries, grocery stores may remain the go-to place for life's essentials.  And though Kentucky otherwise reduces access to wine and liquor by capping the *number* of places that supply it, the state can also reduce access by limiting the *types* of places that supply it—just as a parent can reduce a child's access to liquor by keeping smaller amounts in the house *and* by locking it in the liquor cabinet.

Our conclusion also rings true regarding minors.  According to a plausible set of facts, more minors work at grocery stores and gas stations than other retailers; after all, grocery stores and gas stations conceivably provide more low-skilled and low-experience jobs, including clerks, baggers, and stockers.  Kentucky could also believe that grocery stores typically outweigh other retailers in size and traffic, allowing minors to more easily steal wine or liquor.  Regarding gas stations, their convenience and prevalence near highways suggest an even greater danger in allowing alcohol sales. Fosdick and Scott recognized in the early days of the automobile that the saloon system of the pre-Prohibition era "was not unlike that now used in the sale of gasoline, and with the same result:  a large excess of sales outlets."  Fosdick & Scott, *supra*, at 29.

Courts, including ours, sustain similar alcohol provisions against challenges under the Equal Protection Clause. For example, we upheld an Ohio provision that subjected taverns, but not breweries, to local referenda prohibiting packaged beer sales. *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 621–22 (6th Cir. 1997). That case's reasoning—that taverns conceivably pose a greater risk of fights, automobile accidents, and crime—applies equally here. So does the reasoning of a case concluding that bars conceivably pose a greater risk of underage drinking than do restaurants, *see Gary v. City of Warner Robins*, 311 F.3d 1334, 1339 (11th Cir. 2002) (sustaining ordinance setting age limits for bars), and a case concluding that rural areas conceivably pose a greater risk of unpoliced alcohol use than do urban areas, *see Simms v. Farris*, 657 F. Supp. 119, 124 (E.D. Ky. 1987) (upholding restrictive license caps for rural areas). *Simms* relied heavily on the 21st Amendment's grant of authority to the states to regulate alcohol use; we need not rely on that amendment because Kentucky's provision here satisfies rational-basis review under the Equal Protection Clause. For present purposes, we note that the 21st Amendment's express grant of authority to the states, if it means anything in this context, provides legitimacy to the state's interest in restricting access to alcohol. *See Granholm v. Heald*, 544 U.S. 460, 486, 493 (2005) (noting that the states "have broad power to regulate liquor under § 2 of the Twenty-First Amendment").

## III.

In their cross-appeal, the grocers contend that the statute and regulation "are also void for vagueness" under (1) the separation-of-powers principle of the Kentucky Constitution and (2) the due-process clauses of the state and federal constitutions.

We start with Kentucky's separation of powers. Kentucky's constitution, perhaps more than any other, "emphatically separates and perpetuates what might be termed the American tripod of Government." *Bd. of Trs. of Judicial Form Ret. Sys. v. Attorney Gen.*, 132 S.W.3d 770, 782 (Ky. 2003) (internal quotation marks omitted); *see* Ky. Const. §§ 28–29. But, even in Kentucky, this principle means only that the "duty to define general terms cannot be delegated by the legislative branch to the executive

branch." *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 699 (Ky. 2004). After all, "given the realities of modern rule-making, the General Assembly has neither the time nor the expertise to do it all; it must have help." *TECO Mech. Contractor, Inc. v. Commonwealth*, 366 S.W.3d 386, 397 (Ky. 2012) (internal quotation marks and brackets omitted). Therefore, the General Assembly need prescribe only "sufficient standards to prevent the agency from exercising unfettered discretion." *TECO*, 366 S.W.3d at 398; *see also Judicial Form*, 132 S.W.3d at 782.

Section 243.230(7) does just that, granting *limited* discretion to the administrative board. The statute, from its 1938 inception to the present, addresses businesses in which "a substantial part of the commercial transaction consists of selling at retail" staple groceries or gasoline. Accordingly, the board may regulate only businesses whose sales of staple groceries and gasoline make up a substantial part of their commercial transactions. The regulation follows these terms: only businesses that sell staple groceries or gasoline at a rate of at least 10% of gross monthly sales may not apply for wine-and-liquor licenses. 804 Ky. Admin. Regs. 4:270 § 1. Moreover, the board's authority is further limited to operations selling staple groceries—"major trade item[s] in steady demand." Webster's II New College Dictionary 1076 (2001). Again the regulation follows these terms, excepting from its definition of "staple groceries" "food products prepared for immediate consumption," among other things. *See* 804 Ky. Admin. Regs. 4:270 § 2.

At bottom, the statutory language limits the board's authority to define the terms of the statute. This fact distinguishes this case from the one relied upon by the grocers, *Diemer v. Commonwealth*, 786 S.W.2d 861, 864–65 (Ky. 1990). In that case, the General Assembly imposed restrictions for erecting billboards "outside of an urban area" while defining "urban area" as "those areas which the secretary of transportation, in the exercise of his sound discretion and upon consideration being given to the population within boundaries of an area and to the traveling public, determines by official order to be urban." *Id*. at 862. The General Assembly expressly granted the executive branch the authority to define the statute's application. Here, by contrast, the General Assembly

used the limiting terms "substantial," "part of the commercial transaction," and "staple" to cabin its application.

The due-process claim similarly lacks grounding. The grocers rely on cases involving criminal statutes for the proposition that a statute is void for vagueness if people of common intelligence must necessarily guess at its meaning. *See Connally v. Gen. Const. Co.*, 269 U.S. 385 (1926); *Sullivan v. Brawner*, 36 S.W.2d 364, 367–68 (Ky. 1931). But, unlike a criminal statute that threatens a defendant's liberty, the Kentucky statute at issue here affects no liberty interest. Nor do the grocers assert that the statute offends a property right, and thus the statute avoids procedural due-process scrutiny. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–71 (1972); *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005).

## IV.

For these reasons, we REVERSE in part and AFFIRM in part.